JOSEPH W. TRUST *v.* JAMES PIRSSON and others.

A lien exists either by the express agreement of the parties, or is implied from their mode of dealing, or it follows from the established usage of trade, or it is founded upon the immemorial recognition by the common law of a right to it in special cases.

*It seems* the lien is recognized in the case of every bailee for hire who takes property in the way of his trade and occupation, and by his labor and skill imparts additional value to it.

Trust v. Pirsson.

If a special agreement for a particular mode of payment, or for payment at a future period, is made in any case in which a right of lien would otherwise be implied, the lien does not exist. If such an agreement is made before the claimant acquires possession of the chattel no lien is created, if made thereafter it is a waiver of the lien.

By agreement between P. and T., P. was to have the right to store, repair and sell piano fortes in T.'s store, for which privilege he was to pay $25.00 per month at the expiration of each month.

*Held,* that T. had no lien on the piano fortes for the amount due under this agreement.

An action having been brought upon this agreement to recover a balance claimed to be due thereon, and to enforce a lien therefor, and a verdict having been rendered for the plaintiff for $1.

*Held,* that the action was one for the recovery of money only, and the defendant was entitled to costs.

The proper mode of enforcing a common law lien against chattels discussed. *Per* BRADY, J.

APPEAL by plaintiff from an order at special term awarding costs to defendants. This was an action to recover the sum of $52 due for storage, &c., and to enforce a lien on certain piano fortes therefor. In November, 1854, an agreement was made between the plaintiff and the defendant Pirsson, by the execution of the two following writings, the one executed by Pirsson to Trust, and the other by Trust to Pirsson.

"I hereby agree to pay Joseph W. Trust twenty-five dollars per month, for the privilege of stowing in his store, No. 65 Walker street, piano fortes, with the right of repairing piano fortes in said store, from the date herein mentioned, to the first day of May, 1855.

    \*        \*        \*        \*        \*        \*

"New York, November, 5th, 1854.

       "(Signed)          JAMES PIRSSON."

"New York, November 6th, 1854.—I hereby agree to allow Mr. James Pirsson to store in my store, No. 65 Walker street, piano fortes, and to repair piano fortes, and to sell piano fortes, in my store, for twenty-five dollars per month, to be paid monthly ; nothing in this agreement is to be construed into a let-

ting of said store to said Pirsson; the said amount of twenty-five dollars is to be paid at the expiration of each month, and this agreement to remain in force until the first of May, 1855.

"(Signed)  J. W. TRUST."

The complaint averred that there was due the plaintiff, from the defendant Pirsson, the sum of fifty-two dollars under this agreement; that the defendant had wrongfully and forcibly entered the plaintiff's store, and removed the piano fortes after the plaintiff had locked them up, for the purpose of securing the lien which he claimed to have upon them, and the complaint prayed that the piano fortes might be sold, and the amount of the plaintiff's claim be paid out of the proceeds. Ferdinand G. Lighte, Henry J. Newton and Edward G. Bradbury were joined as defendants, upon the allegation that they had, or claimed to have, some interest in the piano fortes. The defendant Pirsson's answer contained an allegation that the plaintiff had locked up the piano fortes which were in his store, and wrongfully detained them from his possession, and claimed damages therefor. The cause was tried before a jury. They allowed the defendant's counter-claim, and assessed his damages at thirty-nine dollars. They also found that forty dollars was due the plaintiff, under the contract, and they rendered a verdict in his favor for the balance of one dollar. The defendants, on this state of facts, moved, at special term, for an order allowing them costs. This order was granted. The following is the opinion of Judge Brady, before whom the motion was heard.

BRADY, J.—This action was brought to enforce a lien for the storage of pianos, that had been wrongfully taken from the plaintiff, after his lien had attached, and the complaint prays for judgment against the defendants; that the piano fortes be sold, and that fifty-two dollars (the amount of the lien) be paid to the plaintiff, from the proceeds, together with interest, from March 19, 1855, and the costs of the action, and that he have such other and further relief as may be just. The verdict rendered by the jury, impanelled to try the issues presented on the pleadings,

found the counter-claim set up to be $39, and the claim of the plaintiff to be $40, and thus giving the plaintiff judgment for $1. On this state of facts, and on the pleadings, the defendants ask for costs, and the plaintiff insists that the action being equitable in its nature, the costs are, under section 306, at the discretion of the court. It is said in *Fox* v. *McGregor* (11 Barb. 41), that an innkeeper's remedy, to enforce a lien for keeping the horse of his guest, is by action in the nature of a bill in chancery, the court citing 1 Cow. Tr. (2d ed.) 299. On examination of the book referred to, it is said to be " supposed that the only way in which satisfaction from a lien can be enforced, is by a lien in chancery," referring to 1 Strange, 556; 1 Holt N. P. R. 583; 2 Kent. Com. (3d ed.) 642, and other cases cited. And we find, on examination of Edwards on Bailments, 414, the statement of the same principle in reference to innkeeper's lien, with a reference to the cases just stated, also *Fox* v. *McGregor*, *supra*, and 8 Mod. R. 172. Upon examination of 2 Kent, we find the contents to be, "I presume that satisfaction of a lien may be enforced by a bill in chancery," without referring to any authority, and leaving the subject upon the opinion of the author only. With due deference to the learned author of Cowen's Treatise, I assert that the authorities referred to on this point have no bearing upon the principle stated by him in the context, and that they relate to actions of trover in which the doctrine of equity power or jurisdiction is not suggested. Where the lien existed, and the remedy at law was inadequate, I have no doubt the Court of Chancery had the power to enforce any right, but I deny that, on the authorities referred to, such a proceeding as suggested could be sustained, and certainly not in any case, unless the matter in dispute, exclusive of costs, exceeded the value of $100. 1 Barbour Ch. Pr. 39; 2 R. S. 173, § 49 (orig. § 37). In this case, the value of the property was not proved on the trial, and was not passed upon by the jury; if it had been, then we should be met by the difficulty that the equitable remedy to enforce the lien is predicated upon the possession of the property by the lienor,

and not where he has parted with it, or it has been violently taken from his custody. Voluntarily yielding possession is a waiver of the lien. 1 East, 4; 26 Wend. § 67; 2 Kent (7th ed.) 810; 3 Hill, 435. But where the chattel or thing to which the lien has been attached is tortiously taken from the lienor, he may maintain replevin to recover it and enforce his lien. *Bigelow* v. *Heaton*, 6 Hill, 43. The complaint, here, does not ask the *possession of the property* affected by the lien, but for a judgment for $52 against the defendant, and a sale of that property to satisfy that judgment. There is no proof in the case from which the particular property designated could be described, if such a judgment could be rendered, and the property itself is neither in the possession of the court, or officer appointed by it, nor of the plaintiff. Although the nature of the claim may be equitable, the action is one to recover a sum of money, and on the proof and the finding of the jury, no judgment other than a judgment for the recovery of money can be entered. In these views of this application, it seems to me conclusive, that the defendants are entitled to their costs. I admit that the questions presented are new and embarrassing, but I think, aside from the exact character of this action, there was no necessity for an "equity" action contemplated by section 306. But if there was, and this action was so designed, the facts proved do not place it within that jurisdiction. The defendants' costs ordered, and judgment for plaintiff for $1.

From the order entered in accordance with this opinion, the plaintiff appealed.

*Banks and Anderson*, for the appellant.

*A. M. Culver*, for the respondents.

DALY, J.—The chief difficulty in this case—that is, whether the plaintiff had any lien at all—does not appear to have been considered upon the trial, nor upon the submission of this appeal.

That he had no lien is very clear. A lien at common law and

in equity is a right to retain and possess a thing until some charge upon it is paid and removed (2 Story Eq. Jur. § 1216), and as far as it relates to personal property, it depends less upon any general principle than upon the usage of trade, or the recognition of a right to it, in particular instances. *Kruger* v. *Wilcox*, 1 Amb. 253, and note, 2 ed.; *Green* v. *Farmer*, 4 Bur. 2221. Thus a wharfinger or warehouseman has a lien, by established commercial usage, upon the goods deposited with him, for his charges. *Rex* v. *Humphrey*, McClel. & Y. 173; *Boardman* v. *Sill*, in note to *Attersoll* v. *Briant*, 1 Camp. 409; *Naylor* v. *Mungles*, 1 Esp. 109; *Schmidt* v. *Blood*, 9 Wend. 270. While the finder of a chattel has no lien for the expense he may have been at in taking care of it for the owner. *Nicholson* v. *Chapman*, 2 H. Black, 254. Nor has an agistor upon the cattle he depastures (*Jackson* v. *Cummins*, 5 Mees. & Welsb. 342); nor a stablekeeper for the keep of a horse (*Wallace* v. *Woodgate*, 1 C. & P. 575); though the natural equity in favor of allowing this kind of security in the three latter cases is quite as great as in the former.

A lien exists either by the express agreement of the parties or it is implied from their mode of dealing, or it follows from the established usage of trade, or it is founded upon the immemorial recognition, by the common law, of a right to it, in special cases, as in the case of carriers, innkeepers, and farriers, who are bound to receive employment when offered to them in their particular calling, and who are liable to an action if they refuse. *York* v. *Greenough*, 2 Ld. Ray. 866; *Parkhurst* v. *Foster*, 1 Salk. 388; *Lane* v. *Cotton*, 12 Mod. 484. And in the case of tailors, *Cooper* v. *Andrews*, Hob. 42; and of dyers, *Green* v. *Farmer*, *supra*; which has led to the recognition of it in the case of every bailee for hire who takes property in the way of his trade and occupation, and by his labor and skill imparts additional value to it. *Bevan* v. *Waters*, Mo. & M. 235; *Scharf* v. *Morgan*, 4 Mees. & Welsb. 283; *Grinnel* v. *Cook*, 3 Hill, 491.

But if, in any case where the right to a lien would be recognized or implied, the parties make a special agreement for a particular mode of payment, or for payment at a particular time or

period, the right of lien, which would otherwise be implied, does not exist. *Chase* v. *Westmore*, 5 M. & S. 180; *Cowell* v. *Simpson*, 16 Ves. 275; *Walker* v. *Birch*, 6 T. R. 258; *Chandler* v. *Belden*, 18 Johns. R. 157; *Woolen Manufactory* v. *Huntley*, 8 New Hamp. 441; *Cumming* v. *Harris*, 3 Verm. 244. If the agreement is antecedent to the possession, no lien is created; if it is made afterwards, it is a waiver of the lien. Indeed, it was long doubted whether any lien could exist where the parties specially agreed as to the price (*Brennen* v. *Currint*, Sayre, 224; Yelv. 67, note); but upon a full examination of the early authorities in *Chase* v. *Westmore*, *supra,* this was repudiated, and it was shown that the rule, to be extracted from the year books, extended no further than to deny the right of lien where a future time of payment was fixed by the parties.

The agreement of the parties in this case is contained in two instruments, one signed by the plaintiff and the other by the defendant Pirsson; and, taken together, they show that Pirsson was to have the right to store, to repair, and to sell piano fortes in the plaintiff's store, for which privilege he was to pay $25 a month, to be paid at the expiration of each month, and the agreement was to continue in force from the time of its date, Nov. 6 1854, until the 1st of May following. This was, in substance, an agreement to use the store for six months for a particular purpose, and is very distinguishable from a contract with a warehouseman, the only character in which the plaintiff could claim to have a lien upon the pianos under this agreement.

Goods are deposited with a warehouseman for safe keeping. He has the custody of them, and, in the safe keeping of them, is bound to ordinary care and diligence, being liable if they are injured, while in his care, through his negligence; and he is generally understood to be one who carries on a public business of receiving goods into his custody, or under his care, for reward. *Thomas* v. *Day*, 3 Esp. 262; *Platt* v. *Hibbard*, 7 Cow. 500, and note *a*. And even a warehouseman's right to a lien has been doubted (*Rex* v. *Humphrey*, *supra*); or, if upheld at all, it can only be by established commercial usage, which was offered to

be proved in *Schmidt* v. *Blood, supra.* But no such employment as this arose, or is contemplated by this contract. Pirsson was not merely to have his pianos stored, but he was to have the use of the plaintiff's store for the repairing and sale of his pianos for a definite period. By the contract it was provided, that it was not to be construed into a letting of the store—that is, Pirsson was not to have the exclusive possession, but the use of it, and a possession in common with the plaintiff, for the purpose specified. This was very different from an agreement with a warehouseman for the storing of goods.

But even if it could be treated as a contract of that description, the agreement for the payment of $25, at the expiration of each month during the period the agreement was to continue, was wholly inconsistent with the retention of the right of lien. The authorities cited are conclusive on this point. In *Woolen Manufactory* v. *Huntley, supra,* the defendant was to dress what flannel should be sent to him during a year, and to receive his pay quarterly, and it was held that he had no lien. The distinction, that there can be no lien where the day or time for payment is regulated and fixed by the parties, is as old as the year books, and it is manifest that the law could not be otherwise. The right to detain all the property to which the lien attaches, until the charge upon it is paid, is incident to the right of lien. When, then, did the lien in this case attach? Certainly not when the possession commenced, for no payment was to be made until a month after. During that time Pirsson had a right, under the agreement, to sell any of his pianos that might be there, and of course to deliver them to the buyers, for the plaintiff could set up no claim to action then, nothing being due. The contract, therefore, went into operation with a recognition of rights on the part of Pirsson wholly inconsistent with a reservation of a right of lien. It was nothing else but an agreement for the use of the store for a certain period, at so much per month, for the prosecution of a particular business by Pirsson, and gave the plaintiff no lien upon the property which Pirsson had there in the prosecution of that business, but, by its nature and

terms, was wholly inconsistent with the existence of such a right.

The existence of a lien was directly put in issue by the answer; and if the plaintiff could maintain his action at all in the form in which he brought it, it could only be for money due under the contract for the use of the store. Having obtained a verdict, we must intend, having nothing before us on this motion but the pleading and the judgment, that the jury found in accordance with the law; that he recovered what he was entitled to by the terms of the contract—that is, $40, against which they allowed a counter-claim of $39, for an unlawful interference with and partial or temporary deprivation of the possession, which they had a right to do. *Drake* v. *Cockroft*, 1 Abbott, 208. The action, therefore, being for the recovery of money, and having recovered less than $50, the defendants were entitled to costs, and the order at the special term should be affirmed.

In the view I have taken of this case, it has become necessary to pass upon the questions which have been discussed upon the appeal, and which were assigned as the ground for the decision made by Judge Brady at the special term.

Order at special term affirmed.