## PEZENIK v. GREENBERG.

(Supreme Court, Appellate Term, First Department. March 22, 1916.)

1. LIVERY STABLE AND GARAGE KEEPERS ⬅8(3)—LIEN—CREATION BY CONTRACT—CONSIDERATION.

> Where the lien claimant secured the contract for repairing an automobile, at the same time signing a stipulation agreeing to wait for payment until the owner's claim against the insurance company was settled, the stipulation was a part of the consideration and of the contract, binding on the claimant, so that no lien was created.

> [Ed. Note.—For other cases, see Livery Stable and Garage Keepers, Cent. Dig. § 9; Dec. Dig. ⬅8(3).]

2. SET-OFF AND COUNTERCLAIM ⬅36—PREMATURE SUIT.

> In such case, where the owner replevied the automobile, the claimant's counterclaim for repairs was prematurely brought, in the absence of a showing that the money had been collected from the insurance company.

> [Ed. Note.—For other cases, see Set-off and Counterclaim, Cent. Dig. §§ 65-69; Dec. Dig. ⬅36.]

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by Julius Pezenik against Moritz Greenberg, doing business as the Regal Auto Painting Company. Judgment for defendant on his counterclaim, and plaintiff appeals. Reversed and rendered, and counterclaim dismissed without prejudice.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Mortimer H. Israel, of Brooklyn, for appellant.

Rosansky & Goldberg, of New York City (J. H. Rosansky, of New York City, of counsel), for respondent.

WEEKS, J. This is an action in replevin brought to recover possession of an automobile belonging to plaintiff, on which defendant had made repairs for which he claimed a lien. The pleadings were oral, and defendant's answer was a general denial and counterclaim for $154.50. The right to plead such counterclaim in an action for replevin is recognized in Scognamillo v. Passarelli, 210 N. Y. 550, 105 N. E. 199, reversing 157 App. Div. 428, on the dissenting opinion of Scott, J., below at page 433, 142 N. Y. Supp. 382.

The facts in the present case are as follows:

The plaintiff was the owner of an automobile, which had been damaged by collision, and which was covered by insurance against such damage. On June 11, 1915, a representative of defendant called on plaintiff, and stated that the insurance company had sent him to give an estimate upon the work to be done to repair the damage.

"He said: 'I have been to the insurance company. They gave me your address and sent me to you. If you agree to pay $154, I will get their consent from the company. The adjuster is a friend of mine. I will have to hand him $25. I will fix your car in A 1 condition.' I asked how long it would take to finish the car up. He said: 'Eight days.' I said: 'If the car is fixed, and the company don't give me any money, I will have trouble.' * * * He said: 'If you can't get from the company at once the money, I will wait for

the money. I am satisfied to wait until you get the money.' I said: 'What will you do if they don't pay?' He said: * * * 'I am satisfied to pay the lawyer's fee for you to sue the company, and we will give you the car.'"

Defendant's representative then gave plaintiff the following letter on the letter head of defendant:

"New York, June 11, 1915.

"Mr. J. Pezenik: I agree to wait for the sum of one hundred and eighty dollars for work to be done on Ford car, when Mr. Pezenik gets same amount from Co. Mr. Pezenik will claim money through us from the Co. If necessary, we shall pay lawyer's fee. Regal Auto P. Co., per H. Cogut.
"H. Cogut."

After the repairs were completed the defendant refused to deliver the automobile unless his bill was paid, and the plaintiff commenced this action for replevin on June 26, 1915, and when the marshal visited the defendant's place of business to execute the writ the defendant refused to deliver the car, and it became necessary to summon police assistance before the marshal could take the automobile into his possession.

It was claimed by the plaintiff that the defendant's workmen took the radiator off in order to prevent them from taking out the automobile, and that when taken out it was found to be defective in many respects. It was claimed by the defendant that delivery to the marshal was obtained by means of false representations made by plaintiff that he was prepared to pay the amount of defendant's claim, and this seems from the opinion in the court below to have been a controlling element in the determination of the case, in connection with the ruling as to the effect of the letter of June 11th, to which we shall hereafter refer.

In the view which we take of this case it is not necessary to consider either of these claims. Although both defendant and his representative, Cogut, were examined upon the trial, there was no denial of his authority to take the order and sign the letter of June 11, 1915, and he made no denial or contradiction of the testimony of plaintiff as to the conversation prior to the delivery of the car to defendant for the purpose of making the repairs. The court dismissed the complaint, and vacated and set aside the writ, and awarded judgment to the defendant on his counterclaim for $154.50.

When the letter of June 11th was received in evidence the court said:

"I will rule on this paper now that in the opinion of the court the paper which is now offered in evidence has no valid force or effect, and if I find that this work was done I will hold that the lien they had, the artisan's lien, was not waived by this paper."

Later the court said:

"I shall hold it to be the law in this case, as I consider the agreement, that that agreement is absolutely valueless, because it is without consideration."

[1, 2] In both of these rulings, to which plaintiff duly excepted, the court was manifestly in error. The agreement to wait for payment until the insurance money was collected was a material part of the contract under which the defendant obtained possession of the auto-

mobile, and therefore no right of lien existed, and no lien was created. As stated in Trust v. Pirsson, 1 Hilt. 292, 297:

"If, in any case where the right to a lien would be recognized or implied, the parties make a special agreement for a particular mode of payment, or for payment at a particular time or period, the right of lien, which would otherwise be implied, does not exist. Chase v. Westmore, 5 M. & S. 180; Cowell v. Simpson, 16 Ves. 275; Walker v. Birch. 6 T. R. 258; Chandler v. Belden, 18 Johns. 157 [9 Am. Dec. 193]; Woolen Manufactory v. Huntley, 8 N. H. 441 [31 Am. Dec. 198]; Cumming v. Harris, 3 Verm. 244. If the agreement is antecedent to the possession, no lien is created; if it is made afterwards, it is a waiver of the lien. * * * The distinction, that there can be no lien where the day or time for payment is regulated and fixed by the parties, is as old as the Year Books, and it is manifest that the law could not be otherwise. The right to detain all the property to which the lien attaches, until the charge upon it is paid, is incident to the right of lien."

Or as stated by Rapallo, J., in Wiles Laundering Co. v. Hahlo, 105 N. Y. 234, 240, 11 N. E. 500, 502 (59 Am. Rep. 496):

"All these cases are subject to the condition that there is nothing in the contract for doing the work inconsistent with the right of lien, and that where a particular future time of payment is fixed, which may be subsequent to the time when the owner is entitled to a return of the article upon which the work is done, there can be no lien, and that where the parties contract for a particular time or mode of payment the workman would have no right to set up a right to possession, inconsistent with the terms of his contract, and in such a case there is no lien."

The plaintiff, therefore, was entitled to judgment for possession of his automobile, and, as there was no proof that the insurance money had been collected, or that the plaintiff had neglected or refused to take the necessary steps for its collection, the defendant's counterclaim should have been dismissed as prematurely brought, but without prejudice to his right to bring an action therefor at the proper time, in which action plaintiff would then be able to plead any defense or claim for damages that he might have.

The judgment appealed from is therefore reversed, with $30 costs to the appellant, and judgment for the possession of the automobile awarded to plaintiff, with costs in the court below, and defendant's counterclaim dismissed without prejudice. All concur.