### EPHRAIM MOULTON & others ·vs. ALLEN GREENE & SONS.

A tradesman's lien is not a general lien for balance of account, but a specific lien upon the identical property upon which labor or expense is bestowed, and only gives him a right to retain the property in his possession until the charges for the work and· expenses upon the identical property are paid.

W. & S. mortgaged two carriages to the plaintiffs, and after the execution of the mortgage retained them in their possession and used them in their business. They afterwards sent them for repairs to the demandants who had claims against W. & S. for repairs on other carriages. *Held*, that the mortgagees might reclaim them of the defendants upon the payment of the latters' charges for repairs done to them, and that the defendants had no lien thereon for repairs done to other carriages of W. & S.

REPLEVIN of two hackney carriages, brought by the plaintiffs as mortgagees. The case was submitted to the court, both in fact and law, a jury trial having been waived. At the trial of the case it appeared that in 1869 the firm of Wheeler & Tallman, livery stable-keepers, mortgaged their stock of carriages to the plaintiffs, to secure them for advances and indorsements. Subsequently Wheeler & Tallman failed, and the plaintiffs took possession of the mortgaged property. A landau and a glass coach, included in said mortgage, were then in the possession of the defendants, who claimed a lien on them for repairs. The plaintiffs tendered the defendants the amount due the latter for repairs on these two carriages, and upon their refusal to surrender them until their charges against the said Wheeler & Tallman for repairs on other carriages, amounting in all to $1,156, had been paid, brought this action of replevin.

*B. N. Lapham*, for plaintiffs.

*Bradley*, for defendants.

BRAYTON, C. J.   The plaintiffs are mortgagees of the two hacks taken upon the writ of replevin in this case, by virtue of a mortgage made by Wheeler & Tallman to them.   Upon the execution of the mortgage the property was left in possession of the mortgagors as provided in said mortgage.   There were other carriages conveyed to the plaintiffs by the same mortgage, which also remained in possession of the mortgagors, and were used by them in their business.

Other carriages beside those now in suit, as they needed repairs, were sent from time to time to the defendants, whose business was that of making and repairing carriages, to be repaired.   They were repaired and returned to the mortgagors, and the expense of repairs charged in account against them, which account is due and unpaid.   Afterwards the carriages now in -suit were sent to the defendants' shop to be repaired, and were repaired by them, the charges for their repair amounting to the sum of $129.   They remained in defendants' possession until taken by the writ in this case.

Before the commencement of this suit Tallman, one of the mortgagors, tendered to the defendants the amount due for all the repairs done to them, and no more, and demanded the delivery of the carriages for the plaintiffs, which was refused, and thereupon they were replevied by the plaintiffs.   And in defence to the suit the defendants claim that they are entitled still to the possession of the property by virtue of their lien thereon, and that the sum tendered was not sufficient to discharge it ; that they had and still have a lien on these carriages, not only for their labor and expenses upon these, but for all the repairs of all other carriages sent to them by the mortgagors and charged in their account.   This is a tradesman lien, which is not a general lien for balance of account, but a specific lien upon the identical property upon which the labor or expense is bestowed, for the amount of such labor or expense.   This lien every person has, who takes property in the way of his trade to bestow his labor and expense upon, and does bestow it.   This right is a *right to retain* the property in his possession until those charges for the work and expenses upon the identical property are paid.   It is a right to re-

tain only, not an interest in the property, and therefore depends upon the actual possession. This possession is said to be the essence of the right. If this be once voluntarily given up, the lien is lost.

The defendants then have a lien upon those carriages still in their possession for charges upon them, but not for the charges upon others before received and given up to the owner, and not for a balance of account for such work. A general lien could only be acquired by custom well established, or the particular mode of dealing between the parties, or by express contract.

The evidence shows no special contract to that end. There is no evidence of any general custom, no evidence tending to show any uniform settled usage. The only evidence of the dealings of the parties is simply that the defendants performed work on other carriages, which were returned, and the expenses charged in account. If this would extend the lien, every tradesman would have a general lien; for every one who gives credit does all this.

The defendants have referred us to two cases as authorities for a general lien. The first is *Young* v. *Kimball*, reported in 23 Pa. State, 193. By statute in Pennsylvania, a lien is given to livery stable-keepers, who had no lien by the common law, for every horse delivered to them to be kept, for the expense of keeping. The horses received by the plaintiff were horses driven in stage coaches, and left the stable for that purpose two days in the week, and returned to the stable on their return from the route. The horses were all delivered for keeping by the same person at the same time, and so the court said the charge of keeping all the horses is one against the owner secured upon all the horses, and is as to the horses joint and several, and one may be detained for the keeping of the whole. The four horses were treated as one, one lot received together as one, kept as one, the lien covering every part of the parcel. This is not the defendants' case. Of all the carriages charged in account, the possession had been before given. The deliveries were several, and not jointly with the carriages now sought to be retained. The court held also that though the horses were suffered to leave the stable twice in every week, this was no surrender of possession by the livery man, and that because the very nature of the business both of the bailor

and bailee required it, and yet a lien was given by the statute. It was no voluntary surrender of possession.

The other case is that of *Lane v. Old Colony & Fall River R. R. Co.* 14 Gray, 143. The company had transported for the plaintiff four cargoes of coal successively, which had been stored on the company's land and taken away from time to time as the plaintiff desired or found it convenient to sell and deliver parcels. Before the whole was removed the company forbade the removal of more, and claimed a lien on what remained for the expenses of the whole. The court said, here the mingling the cargoes together in the bins shows that the whole was regarded by the parties as a continuous carriage and delivery of an entire quantity. And further, if it were not so and the company had a separate lien for each cargo upon each, yet the plaintiff had so intermingled the parcels that they could not be distinguished, and they must be held to have extended the lien to the whole.

This case goes upon the ground that it was one entire lot or quantity, and that the lien extended to every parcel. Here again the case of the defendants differ. There is nothing to show that the carriages referred to in the account were part of an entire lot of carriages of the which the carriages in question were also part. There was no intermingling. The very nature of the property was such that it could not well be intermingled like the coal. Every article was distinct in its nature.

We see no ground to rest a claim for a general lien. The only lien upon these carriages was for the work done upon them. We have assumed that the offer made by Tallman of the $129 charges for repairs of the two carriages, and in payment of that bill, was a legal tender, and that the refusal to receive it put an end to the defendants' right to retain that property in their possession, and that the lien depending upon their right to possess and retain terminated with the right of possession, and that the right thereupon accrued to the plaintiffs to sue out their writ of replevin upon which the property was taken. This is however made a question, and it is claimed that the lien is still not discharged, and it is the right of the defendants still to hold possession for this bill.

This claim is made upon this evidence. Allen Greene, one of the defendants, says he went to the counsel of the plaintiffs on the

day after the replevy, and told him he would receive the money before offered and apply it to the general account, but would not receive it for the particular bill, and the counsel replied that he did not care on what account he received it. The counsel says that he told him in reply to his proposal to take it on general account, that he must take it in payment of the bill, it was tendered for that bill, but that on Greene's repeating that he would take it on general account, he may have said something about general account. But he denies saying that it would make no difference what he did with it.

From this it appears that the defendants applied for the money which had been tendered, and which they had refused, and they received it. Had there been no more, the receipt would simply have relieved the plaintiffs from any duty to keep the money for them. But it is claimed that at the time it was received it was agreed that it should be applied to the payment of the general account, and not to the particular bill. If this do not prove that the tender was not made in payment of the bill, as in our judgment it does not, it would not defeat the tender made. And if it were so agreed while the tender and refusal are admitted, it would not affect it.

With such an admission the lien was lost, and it could only be restored by an express agreement to waive the tender altogether. To prove this the burden is upon the defendants. The burden is not discharged. The evidence fails to prove any such agreement or any intent on the part of the plaintiffs to waive any benefit or advantage they had derived by the tender.

*Judgment must be for the plaintiffs for damages and costs.*