## Firth & Foster Bros. *v.* Hugh J. Hamill, Assignee of Deelmore Manufacturing Company, Appellant.

*Lien—Contract—Bailment—Evidence—Presumption.*

Where a person not compellable by law to receive bailments gives notice that he will not receive any property for the purpose of his trade or business except on condition that he shall have a lien upon it, not only in respect to the charges arising on the particular goods, but for the general balance of his account for like charges on other goods, a lien will be created on account of such other goods, and all persons who deal with him with the knowledge of such notice, will be deemed to have acceded to that agreement.

A dyer printed on his invoices, monthly statements, delivery books and memoranda, the following notice: "NOTICE—All goods received only upon condition that they are subject to a general lien, not only for the dyeing and finishing thereof, but also for the balance of any former account due." Defendant had dealings with the dyer during the period of three or four years, and the transactions between them were many and frequent. *Held*, that the presumption was that the defendant knew of the conditions upon which the dyer received the goods.

Argued March 25, 1895. Appeal, No. 59, Jan. T., 1895, by defendant, from order of C. P. No. 4, Phila Co., December T., 1893. No. 1137, dismissing exceptions to report of referee. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of referee.

This was an amicable action in assumpsit, entered by agreement on January 24, 1894, with the same effect as if a summons in assumpsit had been issued and had been duly returned served, and as if a statement of demand had been duly filed and served on the defendant, setting forth that the defendants had promised to pay the plaintiffs the sum of $5,777.15 if the said plaintiffs had a lien on certain goods for the entire balance due

plaintiffs by the Deelmore Manufacturing Company at the time of the assignment, and alleging further that the said plaintiffs had such a lien, but that defendants refused to pay the said sum of money, and that the same was justly due, and also with the same effect as if the defendant had filed to this statement a plea of non assumpsit, and issue had thereupon been joined.

Subsequently it was agreed between the parties to submit the case to Henry P. Brown, Esq., as referee, in accordance with the act of May 14, 1874.

The referee reported as follows:

" The plaintiffs are engaged in the business of dyeing and finishing, their works being one of the largest dyeing establishments in Philadelphia, and known as the Providence Dye Works.    They had for more than fifteen years past a uniform condition as to lien, on which condition alone they received goods to be dyed and finished.    This condition was printed on all their invoices, monthly statements, delivery books and memoranda.    The words are : 'NOTICE.—All goods received only upon condition that they are subject to a general lien, not only for the dyeing and finishing thereof, but also for the balance of any former account due.'

"They furnished the Deelmore Manufacturing Company, as well as all their other customers, memorandum blanks to be filled by customers with descriptions of the goods to be dyed or finished.    These blanks contained the printed notice.    They sent bills to the Deelmore Manufacturing Company for the work done the day after the goods were delivered to the company. They sent also a monthly statement at the end of each month. The bills and statements were sent by mail and contained the printed statement of notice of lien.    This course was pursued during the whole course of their business with the Deelmore Manufacturing Company, which covered a period of about three or four years.    Goods were received by the plaintiffs from the Deelmore Manufacturing Company and the yarns from the spinners, or commission houses, for the spinners, and the receipts given for the yarn that came from the spinners were upon the blanks of the persons from whom they received them ; and these blanks did not contain the printed notice.    No work, however, was done upon them until it was ordered to be done by the Deelmore Manufacturing Company.

" The goods were not placed in the plaintiffs' possession for any other purpose than for dyeing and finishing. There was due to the plaintiffs the sum of $645.55 for work done on part of the specific goods in their possession at the time of the assignment. This sum was subsequently paid by the defendant. The amount due the plaintiffs at the time of the assignment on general account was $5,777.15.

" When the plaintiffs received yarn from the spinner or commission merchants they generally sent for it, being informed by the defendant when and where to send for it.

" The goods sent directly from the Deelmore Manufacturing Company were collected by the driver for the plaintiffs and receipted for by him at the place of business of the company. The driver took the goods to the plaintiffs and sometimes brought with them an order from the company for dyeing and finishing. Sometimes the plaintiffs received notices from the Deelmore Manufacturing Company to call for the goods, and sometimes the driver received goods when he delivered others that had been dyed and finished.

" When orders for dyeing and finishing were not handed to the driver they were subsequently sent by the Deelmore Company, and as a general rule these orders were on the blanks furnished by the plaintiffs containing the notice, and sometimes on other slips or letter-heads of the Deelmore Manufacturing Company which did not contain the notice. These orders identified the goods and indicated how they were to be dyed and finished.

" When the goods were received from the commission houses, or from the company, no work was done on them until the company sent the order for dyeing. The plaintiffs were not paid at the time of delivery of dyed or finished goods, but sent monthly statements to the company which contained the notice.

" That the plaintiffs had no special contract with the Deelmore company for each separate lot of goods. They sent a bill for each lot of goods, after being delivered, and at the end of the month sent a statement of the same, and the company paid so much on account. The account had been a running one for about three years. After the failure the plaintiffs were paid by the assignee for all the goods that they then had on hand on which work was done.

" The Deelmore Manufacturing Company failed on July 16, 1893. On that day the plaintiffs had in their possession, that came from the Deelmore Company, six hundred and thirty-one pieces of goods, of which three hundred and thirty-two pieces were in the gray, and the balance in various stages or process of being dyed. Twenty-three of the three hundred and thirty-two pieces were afterwards finished by order of the assignee, and were exchanged for other goods in the gray. The remaining three hundred and nine pieces were on hand at the time of the sale and formed lot 488 on the printed handbill. They were sold for $1,172.76. The gray goods substituted for the twenty-three pieces which were finished before the assignment, together with other gray goods substituted after the assignment for goods finished before the assignment, were sold at the sale. They formed lots 437, 486, and sixteen pieces of lot 485. For the dyeing of the two hundred and ninety-eight pieces which they were working upon they have since been paid by the assignee. The assignee paid as well for that which was done on those goods subsequent to the failure as for that which was done prior to the failure. The plaintiffs had not received from the Deelmore Company orders to dye any of the three hundred and thirty-two pieces in the gray.

" At the time of the assignment of the Deelmore Company, and ever since, the plaintiffs have claimed a lien on all of the goods of the Deelmore Company in their possession for the entire amount of the general balance due them, and refused to deliver the goods except upon payment of that balance. The assignee made a request for all of the goods without distinction, which was met by this general refusal.

" The Deelmore Manufacturing Company presented to the plaintiffs a claim for $416.67 for damaged goods.

" The evidence does not show that the damage was caused by the negligence of the plaintiffs.

" The evidence and the letters of Mr. Prichard and Mr. Beck offered in evidence show that this question was settled between the parties prior to the execution of the agreement to sell the goods.

" Counsel for the defendant has requested the referee to find :

" First. That there was no agreement between the plaintiffs and the Deelmore Manufacturing Company for the general lien

on the first lot of goods which was delivered to them to be dyed or finished.

" The referee cannot find as requested.

" There was no evidence offered to prove that the order to dye the first lot of goods was not sent to the plaintiffs on the order furnished by them which contained the printed notice; and the evidence of the plaintiffs established the fact that such orders were in use by them for fifteen years. In the view of the case taken by the referee the fact is immaterial, as it is not claimed that any of the goods first delivered were in the possession of the plaintiffs at the time of the assignment, or form part of the goods in controversy.

" Second. That there was no agreement between the plaintiffs and the Deelmore Manufacturing Company for a general lien on any subsequent delivery of goods to be dyed or finished.

" The referee cannot find as requested.

" Third. That there was no difference between the terms on which the first lot of goods were delivered to the plaintiffs to be dyed or finished and any subsequent lot.

" The referee cannot find as requested.

" Fourth. That there was no agreement between the parties for a general lien for unpaid balances due the plaintiffs on the goods out of which the fund in this case arose.

" The referee cannot answer as requested.

" Fifth. Should the referee find from the evidence that there was an agreement between the parties for a general lien on all goods for unpaid balances due the plaintiffs, then he is required to find who were the parties to the agreement, when and where was it made, what was the consideration to support it, what was the date of the delivery of the first lot of goods under it, and were they delivered to be dyed or finished.

" The referee finds that the parties to the agreement were the plaintiffs and the Deelmore Manufacturing Company; that it was made when and where the Deelmore Company sent goods to the plaintiffs to be dyed and finished, with the knowledge that the plaintiffs received the goods subject to the conditions stated in the printed notice; that the consideration was the work and labor to be performed on the goods; that the date of the delivery of the first lot of goods was three or four years ago; and that they were delivered to be dyed.

" Counsel for the defendant also requested the referee to answer the following points:

" First. That there is no sufficient evidence in this cause of an agreement between the plaintiffs and the Deelmore Manufacturing Company that the plaintiffs should have a general lien upon the goods out of which the fund in this case arose, for any balance due the plaintiffs for work done on other goods of the Deelmore Manufacturing Company.

" The referee cannot answer as requested.   There is sufficient evidence in the cause of such an agreement.

" Second. That under all the evidence in this cause the finding and award should be for the defendant.

" The referee cannot answer as requested.

" Third. Assuming, for the purpose of this point, that the plaintiffs are entitled to a general lien for the balance due on any former account, then the defendant is entitled to have the amount due the plaintiffs reduced by the amount of damage sustained by the injury to Deelmore Manufacturing Company's cloth, should the referee be of opinion that under the evidence such injury was due to the negligence of the.plaintiffs.

" The referee is not of opinion that the evidence shows that the injury was due to the negligence of the plaintiffs.   Even if he were of such opinion, the question was settled between the parties prior to the execution of the agreement to sell the goods ; therefore he cannot answer as requested.

" It is contended that, irrespective of any question of special contract, the plaintiffs in this case were entitled to a lien on the goods in their possession for the general balance due ; that this is not a case of separate and independent bailments under separate and independent contracts ; but that, on the contrary, the plaintiffs had general prices for dyeing the goods of the Deelmore Manufacturing Company, who from time to time sent goods to be dyed and finished under the general contract, and that under such circumstances, at common law, the plaintiffs would have a lien.   In support of this proposition certain authorities were cited by counsel for the plaintiffs. Among others the following : Chase v. Westmore, 5 Maule & Selwyn, 180 ; Steinman v. Wilkins, 7 W. & S. 466 ; Hoover v. Epler, 52 Pa. 523 ; Young v. Kimball, 23 Pa. 193 ; Yearsley v. Gray, 140 Pa. 238 ; Cross v. Knickerbocker, 8 Phila. 496 ;

Jones on Liens, (2d ed.) 732; Holderman v. Manier, 104 Indiana, 121; 3 N. E. Rep. 811.

" In the view of the case taken by the referee it is immaterial whether under the law in Pennsylvania there was such a lien irrespective of a special contract.

" That a general lien may be created by contract between the parties is a proposition that is not disputed; and this may be either by express agreement or by notice from the dyer that he will receive the goods only upon condition that he shall have a lien upon them for the balance due, provided it be shown that the owner received the notice prior to intrusting his property with the dyer.

" In 2 Kent's Commentaries, 637, cited in Overton on Liens, section 7, page 5, the following proposition is laid down :

" ' This general lien may also be created by express agreement, as where one or more persons give notice that they will not receive any property for the purpose of their trade or business except on condition that they shall have a lien upon it, not only in respect to charges arising on the particular goods, but for the general balance of their account. All persons who afterwards deal with them, with the knowledge of such notice, will be deemed to have acceded to that agreement.'

" At page 52, section 45, it is said :

" ' A general lien, therefore, must be shown to have its existence through a proven custom of the trade, or it may be shown by a notice of such claim brought home to the bailor prior to his making a deposit of goods; any further bailment will be presumed made by assent on the part of the bailor. This applies to all cases where the bailee is not compellable by law to receive the bailment.'

" In the case of Kirkman v. Shawcross, 6 Term Reports, 14, a meeting of the dyers of Manchester was held at which certain resolutions were adopted, that the said dyers give public notice that they would not receive goods except on condition that such goods should be subject to a lien for the general balance of account. These resolutions were signed by the plaintiffs and were advertised in the Manchester newspapers, and this advertisement was seen by the defendant. It was held that the plaintiffs had a general lien on the defendant's goods for the balance of his general account. . . . To the same effect : Cumpston v. Haight, 2 Scott, 684.

" In Symonds v. Pain, 6 Hurlstone & Norman, 1 Rep. 709, the master of a steam tug of which the defendants were owners was employed by the plaintiff to tow his smack out of a harbor. In so doing the smack was stranded through the alleged negligence of the master. The plaintiff had on previous occasions hired the defendants' steam tug, and on paying the charge had received a receipt, upon the back of which was printed a notice that the defendants would not be answerable for damage occasioned by any supposed negligence of their servants. *Held*, that it was a question for the jury whether the contract was made on the terms printed on the back of the receipt. . . .

" In Wright v. Trainer, 1 W. N. C. 198, it was held: ' That rules posted in a factory, and known to the employees, form part of their contract with the employers.'

" Even though it appear in evidence that the customer did not read the notice, it is a question for the court and jury to decide whether, in view of all the circumstances, he ought to have read it: Watkins v. Rymill, L. R. 10 Q. B. Div. 178.

" In Penna. R. R. Co. v. American Oil Works, 126 Penna. 485, it was said by the court: ' As between the carrier and the consignee, who is owner, we see no reason why this lien may not be extended by a contract to cover the general balance due by the consignee for the carriage of other goods. There would be no injustice or oppression in asking the consignee to pay what he honestly owed before allowing him to remove the goods from the possession of his creditor, whether that creditor was a natural or an artificial person.'

" It is urged by the defendant that the onus of making out and establishing the right to the general lien lies upon the party claiming it; that it is to be regarded with jealousy by the courts, and requires the strongest proof.

" The question is, did the defendant know that the plaintiffs would receive goods only upon the condition that they were subject to the general lien, prior to sending the goods in question to be dyed; or should the defendant have known it in view of the opportunity offered for such knowledge ?

" The evidence shows that the notice of this general condition was printed on most of the slips on which dyeing orders were written by the Deelmore Manufacturing Company, on the delivery slips signed by the company or its employees, and

on all bills and monthly statements mailed to the company. These papers were in use during the whole course of dealing with the defendant, covering a period of three or four years. In the absence of any denial that the notice or condition was received and read by the officers or employees of the defendant company, the presumption is that it was received and read. No evidence was offered by the defendant to rebut this presumption. The transactions between the parties were many and frequent, and no effort was made by the defendant to show that the officers and employees of the company did not receive and read the notice, or that they were not aware of the condition upon which the plaintiffs received the goods, and the conclusion is irresistible that they sent the goods in question with knowledge of the condition upon which alone they would be received; and under this state of facts the contract has the same force and effect as if it had been formally signed by the parties.

" The referee is of the opinion that the defendant did know of the stipulation for a general lien, and that the goods in question were sent to the plaintiffs under the terms of the notice ; and that the plaintiffs have a lien upon them for the general balance due. He therefore reports that there is due to the plaintiffs the sum of $5,777.15."

Defendant filed exceptions to the report of the referee. The court dismissed the exceptions and entered judgment on the report. Defendant appealed.

*Errors assigned*, among others, were (1) in dismissing exceptions to report of referee, and (2) in entering judgment for plaintiff.

*M. Hampton Todd*, for appellant, cited : Addison on Contracts, 2d Am. ed. 1175; Pollock on Contracts, p. 2.

*Frank P. Prichard*, for appellees, cited : Chase v. Westmore, 5 Maule & Selwyn, 180; Steinman v. Wilkins, 7 W. & S. 466; Hoover v. Epler, 52 Pa. 523; Young v. Kimball, 23 Pa. 193; Yearsley v. Gray, 140 Pa. 238; 2 Jones on Liens, 732; Holderman v. Manier, 104 Ind. 121; Overton on Liens, sec. 45; Kirkman v. Shawcross, 6 Term Rep. 14; Cumpston v. Haigh, 2

Scott, 684 ; Penna. R. R. v. American Oil Works, 126 Pa. 485 ; Symonds v. Pain, 6 Hurl. & Mor. 709 ; Wright v. Trainer, 1 W. N. C. 198.

PER CURIAM, April 8, 1895 :

The questions involved in this case are clearly stated and correctly disposed of by the learned referee. We find nothing in the record that would justify us in sustaining any of the specifications of error; nor do we think that either of them requires special notice. The judgment of the court below, dismissing appellant's exceptions and confirming the finding of the referee in favor of plaintiff, is affirmed on the referee's report.