In the Matter of R. L. NEWPORT AND COMPANY, INC., Debtor.

QUAD/GRAPHICS, INC., Plaintiff,

v.

R. L. NEWPORT AND COMPANY, INC., Defendant.

Arrangement No. 79–B–849.

United States Bankruptcy Court, S. D. New York.

April 14, 1981.

Weil, Gotshal & Manges, New York City, for debtor; Bruce R. Zirinsky and Kenneth H. Eckstein, New York City, of counsel.

Kaplan, Kilsheimer & Foley, New York City, for plaintiff; Dermot Foley, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

During the Chapter XI proceedings of R. L. Newport and Company, Inc., (Newport

or debtor) following the filing of its voluntary petition for that relief as given by Sections 301 *et seq.* of the 1898 Bankruptcy Act, 11 U.S.C. (1976 Ed.) §§ 701 *et seq.*,[1] one of its creditors, Quad/Graphics, Inc., (Quad) filed a claim against Newport's assets. Rule 11–33, 415 U.S. 1024, 94 S.Ct. 3248. That claim, No. 134 on this court's claims register, was for $28,971.67 said to be the amount due from Newport when the Chapter XI petition was filed, same being for services rendered and related freight charges. However, that claim asserted a possessory lien in the amount of $16,620.50 said to have been fastened on property of the debtor in the claimant's possession. Although the debtor's plan was confirmed in November, 1979, Quad's entitlement to the amount due creditors under the plan was withheld while the merits of its claim was determined.

The debtor objected to the claim and, in accordance with Rule 306(c), 411 U.S. 1046, 93 S.Ct. 3131, applicable in Chapter XI cases by Rule 11–33(f), 415 U.S. 1026, 94 S.Ct. 3249, counterclaimed. The complaint sought disallowance of Quad's claim unless it turned over property said to be Newport's or its value—$20,983.05.

This was met by an action begun by Quad with a complaint seeking judgment that it held a valid possessory lien on the property at issue to the extent of its value and an unsecured claim for the remainder of the debt due from the debtor.

The controlling facts emerging from the trial of the issues raised by the pleadings are these:

Newport, the Chapter XI debtor, is a printing broker which designs and, through others, produces catalogs for retailers throughout the United States. Printing brokers make the necessary arrangements for the publication of catalogs for their customers. This includes the printing of the catalogs. Quad, the claimant, is a Wisconsin corporation which prints and assembles the catalogs.

In connection with an order late in 1978, Newport delivered to Quad 79,906 pounds of Northcote Web paper, all of which was to be used in the printing of 300,000 fashion catalogs called for by the order. Quad invoiced Newport for $27,609.50 described here as the "claim services". Freight charges of $1,362.08 were also billed. Quad's terms for these invoices were: "net 30 days from date of invoice".

Before this particular transaction, the parties were not strangers. Between July, 1977 and August, 1978, Newport had delivered other paper to Quad for performance of other services. Presently Quad has in its possession 60,841 pounds of this other paper. This paper is in no way related to the "claim services" for which Quad seeks payment, *i. e.*, paper not used in the December, 1978 300,000 copy order and which is the basis for Quad's claim herein as an unpaid creditor.

■ As the contract to render the claim services was to be performed in Wisconsin, Wisconsin law must be applied to determine the parties rights in this dispute. "It is a general and well settled principle of law that contracts made at one place, to be performed at another, are governed by the law of the place of performance". *Berlet v. Lehigh Valley Silk Mills*, 287 F. 769, 771 (3d Cir. 1923). See *Newark Slip Contracting Co. v. New York Credit Men's Adjustment Bureau, Inc.*, 186 F.2d 152 (2d Cir. 1951), *cert. denied*, 341 U.S. 931, 71 S.Ct. 805, 95 L.Ed. 1361 (1951). Accordingly, Quad's rights, if any, to assert a lien upon the paper now in its possession turn upon an analysis of Wisconsin's law governing a bailee's common law or, as often referred to, artisan's lien.

1. The 1898 Act's Chapter XI process resulted in successful confirmation of a plan offered by Newport and accepted by its creditors within the statutory scheme.

As the petition was filed before the effective repeal of the 1898 Act, it continues to control this dispute despite its demise. Section 403(a) of Title IV of the 1978 bankruptcy reform legislation, 92 Stat. 2549, 2683, directs that this be so.

The law seems settled that where articles are delivered by one person to another who is to perform labor upon them or manufacture them, the transaction is a bailment, notwithstanding the fact that the articles are returned in altered form. See generally 8 C.J.S. *Bailments* § 1. This definition precisely defines Quad's relationship with Newport. And, in appropriate circumstances, a lien may be fastened on the property delivered to the bailee so that the necessary work may be done.

Wisconsin's courts have historically recognized and affirmed the existence of the common law or artisan's lien, notwithstanding the enactment of numerous specific statutes in the area, e. g., Section 289.48 of its lien law outlining the procedure for the enforcement of liens. In *Moynihan Associates, Inc. v. Hanisch*, 56 Wis.2d 185, 201 N.W.2d 534 (1972), the Supreme Court of Wisconsin reaffirmed the viability of the common law lien in Wisconsin and reaffirmed the creation of such lien according to common law standards fixing their validity.

In *Moynihan, supra*, a film producer brought a replevin action to regain possession of the balance of a quantity of film he had given to a film editor for processing. The editor counterclaimed for the value of his services in processing the film. The trial court granted judgment in favor of the film editor in the amount of his counterclaim, and dismissed the producer's complaint. The producer appealed. On review by the Supreme Court, the court held that where the film editor had edited some 39,000 feet of exposed film, narrated, added titles, sound mixed, conformed and fine cut a finished product of some 5,000 feet and retained some 32,000 feet of leftovers in his possession, the editor had a bailee's common law lien on the retained film for the full amount due on the editing agreement.

The Wisconsin court outlined the four elements constituting a common law lien: (1) an agreement, express or implied, to redeliver the property bailed when the purpose of the bailment has been fulfilled; (2) possession of the chattel must be temporarily transferred with general title of the chattel remaining in the hands of the original owner, *Byrnes v. Metz*, 53 Wis.2d 627, 193 N.W.2d 675 (1972); (3) that implicit in this relationship, the general titleholder must be out of possession of the chattel and the bailee must be in a position to exercise possessory rights. *Byrnes v. Metz, supra*. These three elements are clearly present in the instant dispute between Newport and Quad.

But, Quad runs afoul of the fourth element held controlling in *Moynihan, supra*. This fourth and all important element requires the property which is the subject of the bailment to come into the hands of the bailee as part of a single transaction or contract.

"The fact that part of the goods was returned is immaterial. The rule is that the work to be done upon the bailed article may be regarded as a unit, and the lien attaches to all of the property." *Moynihan, supra*, at 537.

This last requirement has consistently been applied in a contest over a bailee's right to a lien.

"A bailee's lien for compensation for repairing, altering or improving goods by his labor and skill, or by the addition of material, extends to all the goods in his hands received under a *single contract*, even though he has performed the contract only as to part of such goods .... When, however, each lot of goods is delivered to the bailee under separate contract, he acquires a lien only on the particular lot of goods so delivered, and only for the work done thereon, *so that if that lot is returned to the bailor, the bailee, by parting with possession, has destroyed his lien on that lot of goods and cannot transfer it to any other lot received under a separate contract.*" (emphasis added) 8 Am.Jur.2d *Bailments* § 253.

The evidence here is that the paper delivered by Newport to Quad for "claim services" was fully consumed. The finished catalogs were shipped out and Newport was invoiced for Quad's printing services. The paper presently in Quad's possession is not

part of this unit and Quad may not fasten a common law lien on it. So much Wisconsin law makes plain. Undaunted, Quad proffers another ground in support of its position. It argues that it is an equitable rather than a common law lien which upholds the validity of its position. Quad properly distinguishes an equitable from a common law lien, noting that the former does not insist as does the latter that the property bear a direct relationship to the transaction out of which the lien arises. The equitable lien, unlike its common law counterpart, is merely a charge or encumbrance upon property for the purpose of security. It does not divest upon surrender of possession. In that light, even though the excess paper held by Quad might have been accumulated from other jobs, a factor fatal to a common law lien, it is irrelevant to a creditor with a valid equitable lien. See generally Annot., 25 A.L.R.2d 1030 (1952); 51 Am.Jur.2d *Bailments* § 22.

But here, too, Quad falls short for it has overlooked a key element in determining an equitable lien, *i. e., notice to creditors.* Courts have recognized that if the bailee has given a general notice to customers that he receives goods for processing or alteration on the understanding that he is entitled to retain goods in his hands at any time for the satisfaction of the balance of an account then due, he may assert a lien extending to unworked goods whether or not for work done under the same contract. *Firth & F. Bros. v. Hamill,* 167 Pa. 382, 31 A. 676 (1895); *Hecht v. Valkone Dye and Finishing Works,* 66 Pa.Super. 97 (1917). However, this notice is the all important factor, and in the absence of such notice and condition on the service, a bailee who has performed work on articles supplied by the bailor cannot extend his lien for the labor on one article to another later deposited with him on a new and separate employment. *Moulton v. Greene,* 10 R.I. 330 (1872).

Here, there is no evidence of general notice having been given to Newport that any or all paper supplied would serve as collateral for any debt that Newport might owe Quad. There was no written security agreement and the court is unable to discover an agreement that arises from the custom and practices of this particular industry. An examination of the parties' conduct reveals that Quad's services were rendered on 30 day open credit terms. These terms were recorded on the invoices and in Quad's letter dated January 3, 1979 to Newport that

"until now, Quad Graphics has been able to extend credit beyond thirty (30) days to our preferred customers without being subject to a service charge. However, with interest rates continuing to spiral (currently 13¼%) we can no longer maintain this policy. Effective immediately our payment terms shall be net 30 days from invoice date . . . ."

This extension of credit to Newport is inconsistent with Quad's right to an equitable possessory lien.

"If the contract of bailment provides for redelivery before payment is due, no lien arises because it is apparent that the bailee has extended credit and has not relied upon the existence of a lien to receive payment."

*Newark Slip Cont. Co. v. New York Credit Men's Adj. Bureau, supra.* See also *In re Tele King Corporation,* 137 F.Supp. 633 (S.D.N.Y.1955).

As Quad does not have a common-law lien nor an equitable possessory lien over the paper at issue presently in its possession, Newport is entitled to judgment on its counterclaim directing Quad to turn over the paper and Quad may assert its general claim for unpaid work, labor and services.

Submit order.