THE WILES LAUNDERING COMPANY, Respondent, *v.* HERMAN HAHLO et al., Appellants.

Where deliveries of property are made under a single contract by the owner to another at different times, for the purpose of having work done thereon which adds to its value, a lien in favor of the person doing the work attaches to all the property, in the same manner as if it had all been delivered at one time; and if a part is voluntarily returned without payment for the work, the workman retains his lien for all the work done, on the property which remains in his possession; the only effect of the return is a release of so much of the security

Where, however, a particular time of payment is fixed by the contract, which is or may be subsequent to the time when the owner is entitled to a return of the property, there can be no lien.

Plaintiff contracted with one H. to launder all the collars and cuffs manufactured by the latter, at a price specified. Plaintiff was to return the goods as fast as laundered and to render a bill and receive payment in cash on the first of each month for all goods laundered and returned during the preceding month In an action brought against a sheriff who had levied on the goods in plaintiff's hands under an execution against H . *held,* that plaintiff had no right of lien either for the balance due him or for the work done on the goods so levied on.

*The Kimball* (3 Wall. 37), distinguished.

(Submitted March 7, 1887; decided April 19, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 3, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*Blumenstiel & Hirsch* for appellant. Where credit is given, oi where a special agreement for a particular mode of payment exists, or a particular time for such payment is provided, no lien exists. (*Trist* v. *Porsson*, 1 Hilt. 292, 297; *Dunham* v. *Pelter*, 1 Daly, 112, 117, 118; *Morgan* v. *Congdon*, 4 N. Y. 552; *De Varme* v. *Reinhad*, 9 Daly, 406; *Fielding* v. *Mills*, 2 Bosw. 489; 3 Pars. on Cont. 348.) This was not an entire and single contract. Each delivery was a separate contract by itself. (*McFarland* v. *Wheeler*, 26 Wend. 477; *Steinam* v. *Wilkins*, 42 Am. Dec. 254, 258; *Schmidt* v. *Blood*, 9 Wend. 268.) There is no lien for the work done on the goods on hand as against defendants for the reason that when they levied on the goods and offered to pay such amount the right to retain them was placed on another and different ground. In such a case the lien for the true amount was waived. (*La Motte* v. *Arthur*, 4 E. D. Smith, 46; *Maynard* v. *Anderson*, 54 N. Y. 641; *Salters* v. *Everett*, 20 Wend. 267; *Everett* v. *Coffin*, 6 id. 608.) On general principles, and unless there was an agreement to the contrary, the common law lien for the work delivered became lost by surrendering possession of the property. (*Grinnel* v. *Suydam*, 3 Sandf. 132; *Dunham* v. *Pelter*, 1 Daly, 112; *Grinnel* v. *Cook*, 3 Hilt. 492; *Higgins* v. *Murray*, 73 N. Y. 255; *Robinson* v. *Frost*, 14 Barb. 536.)

*N. Davenport* for respondent. The plaintiff having performed labor and furnished materials in laundering goods for Mr. Hoexter, had a common law lien thereon for such labor and materials, unless there was some special agreement for credit or a future time of payment beyond completion of contract so inconsistent with such lien that it destroyed it. (2 Kent's Com. 635; *Morton* v. *Congdon*, 4 N. Y. 552.) Partial payments, partial deliveries, and the fixed price per dozen did not affect or impair the lien. (*Blake* v. *Nicholson*, 3 M. & S. 167; *Chase* v *Westmore*, 5 id. 180.) But for the agreement to make monthly payments, or advances on account, the plaintiff could have recovered nothing until the completion of the con-

tract; and the fact that the agreed price was by the dozen instead of a gross sum did not qualify or change the character of the contract. (*Cunningham* v. *Jones*, 20 N. Y. 486.) The defendants stand in no better position than Hoexter, and cannot be permitted to use any agreement, or to so construe it as to destroy the plaintiff's lien, because Hoexter failed and refused to carry out such agreement on his part. (*Mount* v. *Williams*, 11 Wend. 77.) No usage or rule of the parties was established from which it can be inferred that the plaintiff intended to waive its right to a lien, because the transaction in question was the first one between the parties. (Overton on Liens, 52.) In the case at bar, there was but one bargain, and all the goods were laundered under this one bargain, and plaintiff, therefore, had a lien upon all the goods in his possession at the time of the levy for the balance due. (*Morgan* v. *Congdon*, 4 N. Y. 552; *Blake* v. *Nicholson*, 3 M. & S. 168; *Chase* v. *Westmore*, 5 id. 180; *Schmidt* v *Blood*, 9 Wend. 268.) There was no subsequent waiver or extinguishment of the lien. The lien having once attached, no waiver could be presumed while the lience held possession. (4 Kent's Com. 152; 2 Story's Eq. Jur., § 1226; *Horncastle* v. *Farren*, 3 B. & Ald. 495, 356; *The Kimball*, 3 Wall. 37; *Myers* v. *Uplegrove*, 3 How. Pr. [N. S.] 316; *Becker* v. *Brown*, 61 N. Y. 317; *Kortright* v. *Cady*, 21 id. 343; *Tuthill* v. *Morris*, 81 id. 94.) The tender was not made in time to protect the defendants. (*Wheeler* v. *McFarland*, 10 Wend. 318; *Ray* v. *Harcourt*, 19 id. 495; *Barker* v. *Bennington*, 14 N. Y. 270.) The tender was not made by the proper party. The owner of the goods held the equity of redemption, and was the only person who could redeem them. (*Harris* v. *Jex*, 66 Barb. 232; Code of Civ. Pro., § 1412.)

RAPALLO, J. No controverted question of fact arose upon the trial of this action. Only one witness was examined on the part of the plaintiff, and no testimony was introduced on the part of the defense. The question presented was purely one of law.

The action was brought against the sheriff and the defendant Hahlo, for having, under an execution in favor of Hahlo against one Hoexter, taken from the possession of the plaintiff a quantity of collars and cuffs which had been delivered to the plaintiff by Hoexter for the purpose of being laundered, and upon which the plaintiff claimed to have a lien to the amount of $1,747.72, being the general balance due the plaintiff for laundering the collars and cuffs so taken from it by the sheriff, and also for laundering other collars and cuffs which had been received by it from Hoexter and returned to him before the levy in question. The only question at issue is whether the plaintiff had the lien which it claimed.

The uncontroverted facts were as follows : Hoexter was a manufacturer of collars and cuffs, and the plaintiff carried on the business of laundering for manufacturers. In June, 1884, Hoexter, through his representative, Mr. Kupfer, stated to the agent of the plaintiff that he was about manufacturing a superior line of goods, on which he desired to have the laundry work of the plaintiff, and asked the plaintiff's agent whether the plaintiff could take the job, and the agent replied that the plaintiff could. An agreeement was thereupon entered into, verbally, between them that the plaintiff should do the laundry work on all collars and cuffs Hoexter should deliver to the plaintiff, at the price of sixteen and one-half cents per dozen, payable in cash as follows : That on the first of each month the plaintiff should render a bill for all goods laundered and returned to Hoexter during the preceding month, and should receive payment in cash. That cash was not to be paid at the time the goods were actually delivered to Hoexter, but cash on the first of each month, for goods returned the previous month. That there was no fixed period during which the goods were to be delivered to be laundered, but only until notice by either party That the plaintiff might at any time refuse to do any more goods, and Hoexter might refuse to deliver any fresh goods if he chose, and whenever Hoexter should desire a general settlement and cleaning out of the goods, he should shut down for ten

days and not send any more work, and give the plaintiff a chance to get everything out of the laundry. It usually took seven or eight days to complete the process of laundering the goods. Under this agreement Hoexter began sending goods to the plaintiff's laundry about the eighteenth of June, 1884, and the business continued until the 6th of April, 1885, when it was discontinued on account of the failure of Hoexter.

The work done by the plaintiff during the continuance of the contract amounted to between six and seven thousand dollars. In the course of the business, goods were generally delivered at the laundry, and laundered goods returned, every day. The stipulated monthly payments were, at first, made by sight drafts drawn by Kupfer on Hoexter. This continued until January, 1885, when a sight draft was given for the December account. After January the plaintiff received ten day drafts for the work of the preceding month, down to the close. On the third of April, 1885, the plaintiff received for the March account a ten day draft drawn by Kupfer on Hoexter for the sum of $1,132.41. Hoexter refused to accept this draft, and it was returned protested, and was never paid, and on the 6th of April, 1885, there was a balance unpaid to the plaintiff for work, including this protested draft, of $1,747.72, and the plaintiff had on hand between 2,400 and 2,500 dozen cuffs and collars of Hoexter's, which were taken by the sheriff on the execution against Hoexter, on the 25th of April, 1885, against the protest of the plaintiff's agent, who claimed a lien thereon for the above-mentioned balance of $1,747.72 due plaintiff. It was admitted on the trial that the value of the goods taken was equal, at least, to the plaintiff's claim of $1,747.72, and it was also admitted by the plaintiff's counsel that when the defendants took the goods they tendered the amount due for the work done upon the particular goods which are the subject of this action.

At the close of the testimony, the defendants' counsel moved for a nonsuit on the ground that it appeared that there was no lien on the goods, and also on the ground that there was no lien upon the goods taken, for work done on other

goods which had already been delivered. The court denied the motion, and, no evidence being offered on the part of the defense, the plaintiff's counsel asked the court to direct the jury to render a verdict for the plaintiff for the full amount. The court stated that it had great doubt as to the existence of any lien at all, but that the case was important enough to go to the General Term, and accordingly directed a verdict. To these rulings exceptions were duly taken. Judgment was entered on the verdict, and on appeal to the General Term the judgment was affirmed.

If, under the agreement between the plaintiff and Hoexter, the plaintiff acquired any lien upon the goods laundered, we think that this lien attached to any goods which the plaintiff had in its possession at the close of the dealings, and to the extent of the whole balance then due to the plaintiff for work done, as well upon the particular goods remaining in the plaintiff's possession, as upon those which it had previously returned to Hoexter. All the work was done under a single contract, and the lien attached to all goods delivered to the plaintiff under that contract. By returning a portion of those goods to Hoexter, the plaintiff waived only its lien upon the goods so returned, retaining it for its full amount upon the residue which remained in its possession. This consequence results from the entirety of the contract under which the goods were delivered to the plaintiff to be laundered. If each lot of goods had been delivered to the plaintiff under a separate contract, it would have acquired only a lien upon the particular lot of goods so delivered, and only for the work done on that particular lot of goods, and when that lot was returned to the manufacturer, the plaintiff, by parting with possession, would have destroyed its lien on that lot of goods, and could not transfer it to any other lot received under a separate contract. But where property is delivered for the purpose of having work done thereon, which adds to its value, it makes no difference that the deliveries take place at different times, provided they are all made under a single contract. The lien attaches to all the property, in the same

manner as if it had all been delivered at one time, and if part of it is voluntarily returned without payment for the work, the only consequence is that the person doing the work has abandoned a part of his security for the total amount due him, and retained his lien therefor only upon the property which remains in his possession.    This is the doctrine recognized in *Morgan* v. *Congdon* (4 N. Y. 552) where logs were delivered at the defendant's saw-mill on different days, upon an agreement that defendant would saw into boards all the logs delivered.    The defendant sawed part of them and delivered the boards, without being paid for the sawing, and it was held that he had a lien upon the logs undelivered, for the sawing of the others, provided all the logs were delivered to the defendant under a single contract.    To the same effect are the cases of *Blake* v. *Nicholson* (2 Maule & Sel. 168) and *Chase* v. *Westmore* (5 id. 180) and other cases.    In the case last cited, meal was delivered at a mill at various times to be ground, under a single contract to grind all the meal furnished, at a fixed price, no time or mode of payment being agreed upon, and it was held that after delivery of a part of the meal ground, the grinder could retain the residue for the whole balance due him.

But all these cases are subject to the condition that there is nothing in the contract for doing the work, inconsistent with the right of lien, and that where a particular future time of payment is fixed, which may be subsequent to the time when the owner is entitled to a return of the article upon which the work is done, there can be no lien; and that where the parties contract for a particular time or mode of payment the workman would have no right to set up a right to possession, inconsistent with the terms of his contract, and in such a case there is no lien.    (5 Maule & Sel. 186, 187.)

· In the present case the legal effect of the contract was that the collars and cuffs should be returned to Hoexter as fast as laundered.    On this construction the parties acted throughout their dealings.    Laundered goods were returned, as a general rule, every day during each month.    The plaintiff had no right to

demand pay for each lot delivered, at the time of delivery. The only witness to the contract testifies expressly that such was not the agreement, but, on the contrary, that it was, that on the first of each month Hoexter should pay for the goods which had been laundered and returned during the preceding month. It is clear that the return of the goods to Hoexter was to precede the right to demand payment for the work, by a longer or shorter period, according to circumstances, but certainly some period of time. This is entirely inconsistent with the theory of a lien, as has often been adjudged. The case of *Stoddard Woolen Manufacturing Company* v. *Huntley* (8 N. Hamp. 441) is in point. It was an action of trover against a clothier for converting 1,000 yards of flannels which he had dressed for the plaintiff, and the defendant set up a lien for the price of his work. The work had been done under an agreement between plaintiff and defendant that the defendant should dress what flannels the plaintiff should make during the year, and finish them as fast as manufactured, and bale them, the plaintiff to pay for finishing, once in three months. Under this agreement flannels had been dressed by the defendant and returned to the plaintiff for about six months, and at the end of one of the quarters the defendant had on hand two bales, for the work on which he had not been paid. The plaintiff, through its agent, demanded these bales and the defendant refused to deliver them without being paid for the dressing. The court held that the legal effect of the contract was that the flannels were to be delivered to the plaintiff as fast as dressed, and that the dressing was not to be paid for until the end of the quarter; that by such a contract the right of lien was waived, and that even if some of the cloth remained in the defendant's hands at the end of the quarter he was not entitled to retain it for the price of dressing. The only difference between that case and the present one is that there the work was to be paid for quarterly, and here it was to be paid for monthly.

There are many cases illustrating the same principle. Where it is agreed that a credit is to be given for the price of the

work, not limited to a period preceding the time for the return of the article, the contract is inconsistent with the right of lien, and none can be set up. This rule has been applied even where the party for whom the work was done has become insolvent between the time of the employment and the expiration of the time of credit agreed upon. (*Fielding* v. *Mills*, 2 Bosw. 489.) The same principle is applicable to liens of warehousemen, carriers and other bailees. If, by the terms of the contract, possession of the property is to be surrendered before payment, no right of lien exists. In *Chandler* v. *Belden* (18 Johns. 157, 162), it was held that where, by the terms of the contract, freight was not to be paid until after the delivery of the goods, the carrier could not claim a lien. The present respondent cites the case of *The Kimball* (3 Wall. 37), but on looking beyond the head note, into the opinion of Mr. Justice Field, it is certainly not an authority in favor of the respondent. There, by the terms of a charter party, part of the freight was to be paid in advance. The cargo was to be delivered within reach of the ship's tackle, and the balance of the charter money was to be payable, one-half in five days, and the other half within ten days, after the discharge of the cargo. The opinion rests upon the ground that the provision as to delivery within reach of the ship's tackle, related only to the manner of discharging, and that the credit was given only for a few days after the *discharge* of the cargo, and that it was no more than a reasonable time to enable the freighters to examine the condition of the goods, and determine whether he would accept them, and was not inconsistent with the retention of their possession by the ship owner until the charter money should be paid; distinguishing the case, in this respect, from *Foster* v. *Colby* (3 Hurl. & N. 705).

It is needless to multiply authorities on this point, though many might be cited. The counsel for the respondent contends that the contract being an entire one, no pay for the work done by plaintiff would become due till the termination of the contract, except for the agreement to make monthly payments, and that these payments were merely advances on

account of the entire payment, and that an agreement to make these advances, could not be considered as giving credit to the owner of the goods, but rather a credit to the mechanic.

We cannot agree to this construction of the contract. The payments were not advances on account, but payments in full for the work done on goods returned during the month preceding the payment. But assuming the construction contended for, we are unable to see how it helps the plaintiff's case. The counsel concedes, in his points, that it was unquestionably understood that Hoexter was at liberty to take the goods as fast as they were laundered, because the nature of his business probably required it. If the contract-price of the work was not due until the end of the contract, but the goods were to be delivered in the meantime, we fail to perceive how the contract was consistent with a right to a lien on the goods for that contract price.

We think that the doubt of the learned trial judge, as to the existence of any lien at all, was well founded, and that the judgment should be reversed and a new trial ordered, costs to abide the event.

All concur, except PECKHAM, J., not sitting.

Judgment reversed.