## BERLET v. LEHIGH VALLEY SILK MILLS.

(Circuit Court of Appeals, Third Circuit. March 20, 1923.)

No. 2914.

1. **Bailment ⬅18(2)—All property delivered on single contract is subject to a lien for work on any of it.**

Where there was a separate contract for each of the five loads of silk delivered to a lien claimant for throwing, the throwster acquired a separate lien on each lot, which was lost when that lot was wholly returned; but if all the property was delivered under a single contract, though the deliveries took place at different times, the lien attached to all the property undelivered for all work done on it and on the property wholly delivered.

2. **Bailment ⬅18(2)—Governed by statute where contract was to be performed.**

Where a contract for the throwing of silk was made in New Jersey, but was to be performed in Pennsylvania, the right to a lien for the work done depends on the law of Pennsylvania.

3. **Courts ⬅365—Decisions of state courts followed, where no federal question is involved, and law is not general.**

Where jurisdiction depends solely on diversity of citizenship, so that state law and not federal law is being administered, no federal question is involved, and the law, common or statutory, is not general and has become established as part of the law of the state, a federal court will follow the decisions of the state court of last resort.

4. **Courts ⬅366(18)—Decision of Pennsylvania Superior Court lien statute was unconstitutional followed.**

Though the Superior Court of Pennsylvania is not the court of last resort in that commonwealth, it is a tribunal of such importance that the federal court will follow its decision that Act Pa. May 23, 1907 (P. L. 228), as amended by Act May 20, 1913 (P. L. 271; Pa. St. 1920, § 13851), giving a lien to throwsters of silk, not only on silk thrown and retained but also on silk returned, was class legislation, and violated the Constitution of that commonwealth.

5. **Bailment ⬅18(4)—Special contract for payment is inconsistent with lien.**

A special contract as to the time or mode of payment for doing work on goods is inconsistent with the right of a lien, and waives the common-law lien by showing the parties did not rely thereon.

6. **Bailment ⬅18(4)—Evidence held to show lien was not relied on.**

Where a throwster of silk made a contract to throw the silk for another, which provided that payment should be made on specified dates, not controlled by the delivery of the silk thrown, and there was no question of the other party's financial ability, and there was an open running account between the parties, the throwster relied on the financial ability of the other party, and was not entitled to a lien.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit in equity by Shibawaka & Co. against the Globe Silk Mills, in which George N. Berlet was appointed receiver of the Globe Silk Mills. From a decree disallowing the lien claimed by the Lehigh Valley Silk Mills, the lien claimant appeals. Affirmed.

McDermott, Enright & Carpenter, of Jersey City, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for appellant.

Bilder & Bilder, of Newark, N. J. (Samuel Kaufman, of Newark, N. J., of counsel), for appellee.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

287 F.—49

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from the decree of the District Court refusing to give the Lehigh Valley Silk Mills a lien on silk thrown by it and returned to the owner before insolvency. Some time in the summer of 1919 the Globe Silk Mills, of Paterson, N. J., and the Lehigh Mills, of Allentown, Pa., entered into what was called a "general agreement," whereby the Globe Mills were to send raw silk to the Lehigh Mills to be thrown and returned by it. Whether or not there was a definite monthly amount of 1,200 pounds to be sent is in dispute, but it is not in dispute that, if there was such an understanding, it was never observed. Five different lots of silk, each having its own distinct identifying number, were sent by the Globe Mills to the Lehigh Mills as follows:

|  | On or About | Pounds Raw Silk Shipped. | Quality. | To be Thrown into | Agreed Price per Pound |
|---|---|---|---|---|---|
| (1) | 1/15/20 | 663.50 | Japan 13/15 | 2 thd. Crepe | $4.50 |
| (2) | 2/20/20 | 684.75 | Japan 13/15 | 2 " " | 4.50 |
| (3) | 3/16/20 | 654.65 | Japan 13/15 | 2 " " | 3.00 |
| (4) | 3/16/20 | 650.64 | Italian | 2 " " | 4.50 |
| (5) | 4/16/20 | 697.12 | Japan 13/15 | 2 " Organzine | 2.00 |

The Globe Mills became insolvent, and a receiver in equity was appointed. At the time of his appointment, September 20, 1920, there was due the Lehigh Mills for throwing silk $10,854.30. All the silk sent had been thrown, but a large quantity of it had been returned, and the entire silk not returned was sold for $5,895.57. There was due the Lehigh Mills for throwing the silk retained only $2,020.43. They claim a lien, however, for work done, not only on the silk retained, but also on that returned, to the extent that it will pay their claim. The District Judge allowed the claim for throwing the silk in their possession, but disallowed it for the silk returned. This disallowance is alleged to be erroneous for several reasons:

[1] The throwing was done under a "general" or "continuing agreement," and not under separate agreements for each lot. The Lehigh Mills alleged in the answer that the parties entered into "general agreement," and pursuant thereto the Globe Mills from time to time, as set out in the answer, shipped raw silk, which the Lehigh Mills threw. This is admitted in the receiver's reply. Mr. Max Stein, president and manager of the Globe Mills, with whom the agreement was made, testified that no other "arrangement" was made than this so-called "general agreement." If there was a separate contract for each of the five lots, the throwster acquired a separate lien on each lot, which was lost, however, when that lot of silk was wholly returned. But where property is delivered under a single contract, to have work done thereon which adds to its value, it makes no difference that deliveries take place at different times. The lien attaches to all the property undelivered for all work done on it and on the property already delivered. Morgan v. Congdon, 4 N. Y. 552; Wiles Laundering Co. v. Hahlo, 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496. Was the "agreement" between the parties in this such as brings it within this last-named prin-

ciple of law? There was no observed agreement as to quantity to be shipped, and consequently to be thrown. There was no time limit during which the agreement was to run. The price had to be fixed on each lot when sent. There was no continuing contract for either party could stop at any time. It seems to us exceedingly doubtful that there was a general or single contract conferring a common-law lien. Neither party was bound to anything.

[2] The appellants next argue that, if not entitled to a common-law lien, they were to a statutory lien, conferred by the statute of New Jersey which controls the case, and which provides:

"That all persons or corporations engaged in the business of manufacturing, spinning or throwing cotton, wool or silk into yarn or other goods, shall be entitled to a lien upon the goods and property of others that may come into their possession for the purpose of being so manufactured, spun or thrown into yarn or other goods, for the amount of any account that may be due them from the owners of such cotton, wool or silk, by reason of any work and labor performed and materials furnished in or about the manufacturing, spinning or throwing of the same or other goods of such owner or owners." P. L. 1889, p. 425; 3 Comp. Stat. 3140, § 66.

If this statute controls and is constitutional, the Lehigh Mills undoubtedly have a lien on all the silk in their possession at the time of the appointment of the receiver. The contract was made in New Jersey, to be performed in Pennsylvania. It is a general and well-settled principle of law that contracts made at one place, to be performed at another, are governed by the law of the place of performance. Andrews v. Pond et al., 13 Pet. (38 U. S.) 65, 77, 10 L. Ed. 61; Coghlan v. South Carolina R. R. Co., 142 U. S. 101, 111, 12 Sup. Ct. 150, 35 L. Ed. 951; Hall v. Cordell, 142 U. S. 116, 120, 12 Sup. Ct. 154, 35 L. Ed. 956; London Assurance v. Companhia De Moagens Do Barreiro, 167 U. S. 149, 160, 17 Sup. Ct. 785, 42 L. Ed. 113; Mutual Life Insurance Co. v. Phinney, 178 U. S. 327, 338, 20 Sup. Ct. 906, 44 L. Ed. 1088. The law of Pennsylvania therefore controls. The Act of Pennsylvania of May 23, 1907 (P. L. 228), as amended by the Act of May 20, 1913 (P. L. 271; Pa. St. 1920, § 13851), is identical with the New Jersey act. This legislation was intended to give throwsters of silk, etc., a lien, not only on silk thrown and retained, but also on silk returned. It thus gives to a special class named therein a right of lien and peculiar remedy for collection of debts which it does not give to other citizens and corporations. The Superior Court of Pennsylvania held that this act was class legislation and violated the Constitution of that commonwealth. Gerli v. Perfect Silk Throwing Co., 70 Pa. Super. Ct. 299.

[3] Jurisdiction in this case is based solely on the ground of diversity of citizenship. We are therefore administering Pennsylvania law, and not federal law. The general rule of law is that, when no federal question is involved, and when the law, common or statutory, involved is not general, and has become established as a part of the law of the state, a federal court will follow the decisions of the state court of last resort. Snare & Triest Co. v. Friedman, 169 Fed. 1, 94 C. C. A. 369, 40 L. R. A. (N. S.) 367 (certiorari denied 214 U. S. 518,

29 Sup. Ct. 700, 53 L. Ed. 1065); Public Service Co. v. Wursthorn et al. (C. C. A.) 278 Fed. 408.

[4] While the Superior Court of Pennsylvania is not the court of last resort in that commonwealth, it is a tribunal of such importance that this court will follow its decision construing this statute. Erie Railroad Co. v. Hilt, 247 U. S. 97, 100, 38 Sup. Ct. 435, 62 L. Ed. 1003. Consequently the Lehigh Mills did not have a statutory lien on the silk undelivered for throwing the silk unqualifiedly delivered. All that it had was a common-law lien on the silk in its possession for the work done on it. But, assuming that the Lehigh Mills threw all the silk under either five separate contracts, one for each of the five lots of silk, or under one general continuing contract, they cannot prevail, because of the agreement that the silk thrown should be paid for after it had been returned.

[5, 6] A special contract as to the time or mode of payment, is inconsistent with the right of a lien. In other words, a common-law lien may be waived by a contract, showing that the parties did not rely upon the lien. Morgan v. Congdon, supra; Wiles Laundering Co. v. Hahlo, supra. The testimony shows that payment was to be made "between the 10th and every 15th of the month" for the silk thrown during the previous month, and was to be returned, and was returned, when thrown, without regard to the specified time of payment. The Lehigh Mills did not rely on a common-law lien, but on their faith in the financial ability of the Globe Mills to pay. Their manager testified that there was no "question about his (Globe Mills) financial ability to meet this obligation in the minds of the Lehigh Valley Mills." In addition to the agreed time of payment and the testimony that the Lehigh Mills had no doubt about the ability of the Globe Mills to meet their obligations, the fact that there was an open running account between them, and that the Lehigh Mills voluntarily and without qualification had delivered silk on which it had a charge for throwing to the amount of $8,833.87, is evidence that they were not relying upon a lien, but upon the financial ability of the Globe Mills. In re Lowensohn (D. C.) 100 Fed. 776; The Kimball, 3 Wall. (70 U. S.) 37, 43, 18 L. Ed. 50.

Therefore they may not now enforce a lien, and the order of the District Court is affirmed.