In re SUPREME LINGERIE CO., Inc.

United States District Court
S. D. New York.
May 2, 1950.

---

10. The time of set-off may be important in calculating interest accruing on the two obligations at different rates.

Conrad & Smith, New York City, Samuel Rubin, New York City, of counsel, for bankrupt.

Hahn & Golin, New York City, Harry A. Margolis, New York City, of counsel, for trustee.

SUGARMAN, District Judge.

Supreme Lingerie Co., Inc. was adjudicated a bankrupt on June 30, 1949 after it had filed a petition proposing an arrangement under Chapter XI, 11 U.S.C.A. § 701 et seq. On the day of adjudication the New York Credit Men's Adjustment Bureau, Inc. was appointed Trustee.

On July 25, 1949 Newark Slip Contracting Co., Inc. (hereinafter referred to as Newark) moved before the Referee for authorization to sell, at public auction, pursuant to the statutes of New Jersey, 1252 dozen ladies' slips and the boxes containing the same, constituting the balance in Newark's possession of 1838 dozen slips sewn by Newark from cut piece goods supplied to Newark by the bankrupt. The value of the 1252 dozen slips in Newark's possession exceeded its claim for $5301.33 for the work done by it upon the entire 1838 dozen slips. The difference of 586 dozen slips had been previously delivered by Newark to the bankrupt. Newark asserted a processor's lien for the total sum of $5301.33 upon said goods in its possession and claimed the right to sell them to satisfy the lien, under 2:60–221 et seq., Revised Statutes of New Jersey, Chap. 60, Art. 15, N.J.S.A. The Trustee resisted Newark's application and petitioned the Referee for an order that Newark be directed to turn over the 1252 dozen slips still in its possession to the Trustee.

While these applications were pending, Newark and the Trustee stipulated that the slips would be surrendered by Newark to the Trustee who was authorized to sell them, free of Newark's asserted lien provided that the Trustee hold the net proceeds of such sale subject to the Referee's determination of Newark's contention that it had a lien thereon and that such lien, if any, attach to said proceeds.

In due course, a hearing was held by the Referee which resulted in an order by the Referee on September 28, 1949 granting Newark a common law lien to the extent of $3556.93 representing Newark's labor on the 1252 dozen slips actually in its possession but denying any lien (statutory or common law) on the 586 dozen slips worked on by Newark and delivered to the bankrupt, the labor on the latter representing the difference between Newark's total claim of $5301.33 and the Referee's allowance of $3556.93.

Both Newark and the Trustee being dissatisfied with the Referee's order each petitioned for review—Newark asserting that it had a valid lien on the 1252 dozen for work done on the entire 1838 dozen and the Trustee asserting that Newark had no lien whatsoever.

Insofar as the Referee's order adjudged Newark to have a common law lien on the property of the bankrupt in Newark's possession, at the time of the filing of the petition herein to the extent of $3556.93 and that such lien attached to the proceeds of the sale of said property in conformity with the stipulation, the Trustee's objection is sustained and said order is reversed; in all other respects said order is confirmed and Newark's objection is overruled. The rights of the parties must be determined by the law of New Jersey. Berlet v. Lehigh Valley Silk Mills, 3 Cir., 287 F. 769.

Whether the contract between the bankrupt and Newark was entire or divisible is immaterial, because the direct testimony of Leopold Cohn, Secretary of Newark at the hearing before the Referee establishes an agreement to extend credit. On page 16 s. m. there appears the question and answer, "Q. What were the terms of payment *that were agreed upon with the bankrupt*? A. Terms of payment? On all goods shipped within any given week up until Friday, payment was to be received the following week." (Emphasis supplied). In Berlet v. Lehigh Valley Silk Mills, supra the court, in dealing with an appeal from the District Court of New Jersey, but applying the common law of Pennsylvania, said 287 F. at page 772,

"But, assuming that the Lehigh Mills threw all the silk under either five separate contracts, one for each of the five lots of silk, or under one general continuing contract, they cannot prevail, because of the agreement that the silk thrown should be paid for after it had been returned.

"A special contract as to the time or mode of payment is inconsistent with the right of a lien. In other words, a common-law lien may be waived by a contract, showing that the parties did not rely upon the lien."

Newark is not a "processor" within the meaning of Title 2, Sub-Title 8, Chapter 60, Article 15, Revised Statutes of New Jersey. Had there been no agreement for the extension of credit, Newark might have asserted the common law lien contemplated by Title 2, Sub-Title 8, Chapter 60, Article 4, N.J.S.A. 2:60–32 et seq., Revised Statutes of New Jersey. The last cited statute does not *create* a statutory lien as do some of the other articles (including Article 15) contained in Chapter 60. The statute is "merely declaratory of the common law, and must be interpreted in accordance with its principles". Jones on Liens, § 749, 3rd Edition, Volume 1, page 766. Having extended credit by specific agreement, Newark never acquired any lien, common law or otherwise on *any* of the goods fabricated, whether in its possession or delivered to the bankrupt, Wiles Laundry Company v. Hahlo, 105 N.Y. 234, 11 N.E. 500, 59 Am.Rep. 496.

While the Wiles decision is a New York case, it apparently enunciates the law of New Jersey for, in Stone v. Allied Clothing Corporation, 140 N.J.Eq. 224, 54 A.2d 625, at page 631, Vice Chancellor Bigelow wrote "Furthermore, it clearly appears that Allied must surrender possession of the finished suits before payment could become due. The contract governs and deprives Allied of the lien. Wiles Laundry Co. v. Hahlo, 105 N.Y. 234, 11 N.E. 500, 59 Am.Rep. 496; In re Heinsheimer, 214 N.Y. 361, 108 N.E. 636, Ann.Cas.1916E, 384; Clark Bros. & Co. v. Pou, 4 Cir., 20 F.2d 74."

The subsequent insolvency of the bankrupt does not alter the situation for, as was observed in the Wiles case, [105 N.Y. 234, 11 N.E. 503] "Where it is agreed that a credit is to be given for the price of the work, not limited to a period preceding the time for the return of the article, the contract is inconsistent with the right of lien, and none can be set up. This rule has been applied even where the party for whom the work was done has become insolvent *between the time of the employment* and the expiration of the time of credit agreed upon".

The Referee was correct in holding that Newark could not assert a lien for the 586 dozen slips fabricated and delivered to the bankrupt. The Referee erred, however, in holding that Newark could assert a lien for its charges for services performed on the bankrupt's slips in Newark's possession dischargeable out of the proceeds of the sale thereof.

Order to be settled on two days' notice.