**NEWARK SLIP CONTRACTING CO., Inc. v. NEW YORK CREDIT MEN'S ADJUSTMENT BUREAU, Inc.**

No. 74, Docket 21786.

United States Court of Appeals
Second Circuit.

Argued Dec. 5, 1950.

Decided Jan. 4, 1951.

Conrad and Smith, New York City, Samuel Rubin, New York City, of counsel, for appellant.

Hahn & Golin, New York City, Harry A. Margolis, New York City, of counsel, for appellee.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the appellant, hereafter referred to as Newark, had a lien, and, if so, for how much, upon goods of the bankrupt which were in the possession of Newark on April 18, 1949, the date of filing the petition upon which bankruptcy was later adjudicated.

Newark is in business in New Jersey as a "contractor" in the making of ladies' slips; its work involves sewing and stitching of cut goods supplied by its customers and attaching adornment materials by that method. Pursuant to an oral contract made with the bankrupt in February 1949 it agreed to do this work on 5,000 dozen slips for a stated price per dozen. Thereafter the bankrupt delivered material for 1942 dozen, and Newark made up 586 dozen slips and delivered the finished garments to the bankrupt in New York.[1] Mr. Cohen, who was secretary of Newark and in charge of its production, testified as to the terms of payment agreed upon with the bankrupt: "On all goods shipped within any given week up until Friday, payment was to be received the following week." The contract charge for the 586 dozen delivered to the bankrupt was $1,744.40. No part of it was paid and no more finished garments were delivered, but Newark continued to do work upon the goods remaining in its possession so that its total claim, including the $1,744.40 item, was $5,301.33. Asserting that it had a lien for this sum, Newark petitioned the referee in bankruptcy for leave to foreclose it by selling the goods at public auction.[2] The trustee in bankruptcy answered the petition and asked that the bankrupt's goods in Newark's possession be delivered to the trustee. By stipulation between the parties the goods were surrendered to the trustee to be sold by it, the lien, if established, to attach to the proceeds of sale. After hearings the referee decided that Newark had no lien for labor performed on the 586 dozen slips delivered to the bankrupt in March 1949 but had a lien for $3,556.93 for labor performed on the 1252 dozen which remained in the bankrupt's possession. Both parties sought review of the referee's order. Judge Sugarman sustained the trustee's petition and denied Newark any lien. In re Supreme Lingerie Co., D.C., 90 F.Supp. 456.

As the work was performed in New Jersey, the law of that state as to liens is controlling.[3] The appellant relies primarily upon a common law lien, although it also claims to be entitled to the statutory lien given to "processors."[4] The common law has long recognized that a bailee for hire, whose labor and skill have enhanced the value of the bailed goods, has a lien on them for his charges, if payment by the bailor and redelivery to him are concurrent conditions.[5] But if the contract of bailment provides for redelivery before payment is due, no lien arises because it is ap-

---

1. They were delivered in four instalments: on March 18, 1949, 153 dozen; on March 21, 103 dozen; on March 22, 219 dozen; on March 23, 111 dozen.

2. This is the method prescribed by the New Jersey Lien Law, Article 4 of Chapter 60, N.J.S.A. 2:60–33; see also, Article 15 of Chapter 60, N.J.S.A. 2:60–224.

3. Restatement of Conflict of Laws, § 279; see Berlet v. Lehigh Valley Silk Mills, 3

Cir., 287 F. 769, 771; Phœnix Iron Company v. The Hopatcong and The Musconetcong, 127 N.Y. 206, 27 N.E. 841; Mullin v. Hicks, 49 Barb., N.Y., 250, 254.

4. N.J.S.A. 2:60–221 et seq.

5. Blake v. Nicholson, 3 M. & S. 168, 105 Eng.Rep. 573; Chase v. Westmore, 5 M. & S. 180, 105 Eng.Rep. 1016; White v. Smith, 44 N.J.L. 105; Morgan v. Congdon, 4 N.Y. 552.

parent that the bailee has extended credit and has not relied upon the existence of a lien to secure payment.[6]

The appellant argues that it is a "monstrous thing" to require a contractor, after his customer's default, to make up the balance of the goods and deliver them to the customer or to his trustee in bankruptcy, without hope of payment. This argument misconceives the effect of the bailor's default in failing to pay for the instalments delivered in March. In New Jersey the rule appears to be that default by one party in making payment for one delivery does not release the other party from his duty to make the other deliveries stipulated in the contract, unless the conduct of the party in default evinces an intention to abandon the contract or a design no longer to be bound by its terms.[7] But even if we assume that the bailor's breach of contract would have justified the bailee in refusing to go on, he did not repudiate the contract;[8] he went on making up the goods. If one party to a contract continues performance after a breach by the other he must continue on the contract terms.[9] The breach does not permit him to make a new contract without the other's consent; nor does the bankruptcy. The contract gave the bailor a credit of not less than seven nor more than eleven days after delivery of each instalment of slips. Where the contract gives the bailor a credit, his subsequent insolvency does not entitle the bailee to a lien.[10] The district judge was right in deciding that Newark had no common law lien.

Little need be said with respect to the statutory lien. Concededly Newark is not a "processor" unless it is covered by the final clause of the statutory definition.[11] Counsel argues that Newark is engaged in "manufacturing" goods "of which linen, cotton, wool, silk, artificial silk * * * form a component part." Even verbally these words seem scarcely sufficient, for the goods on which Newark worked formed not a "component part" but the whole of the slip—unless one counts the thread and suspending ribbons. Newark did nothing to the fabric which would fall within the general purport of "processing." The only New Jersey case bearing on the question is Stone v. Allied Clothing Corp., 140 N.J. Eq. 224, 232, 54 A.2d 625, 631, where Vice Chancellor Bigelow said: "It is doubtful whether a tailor is a processor within the meaning of the statute, but I will assume that he is." Moreover, even if Newark were held to be a "processor" the extension of credit would bar the statutory lien, as was stated in the Stone case, supra, 140 N.J.Eq., at page 232, 54 A.2d 625, where the credit (eleven days) was substantially the same as in the case at bar.

For the foregoing reasons we agree with the district court that Newark had neither a common law nor statutory lien. Order affirmed.

6. Wiles Laundering Co. v. Hahlo, 105 N.Y. 234, 11 N.E. 500, and Clark Bros. & Co. v. Pou, 4 Cir., 20 F.2d 74, cited with approval in Stone v. Allied Clothing Corp., 140 N.J.Eq. 224, 232, 54 A.2d 625; Stoddard Woolen Manufactory v. Huntley, 8 N.H. 441; Lathrop Lumber Co. v. Fitts, 208 Ala. 334, 94 So. 354. See Morgan v. Congdon, 4 N.Y. 552, 553.

7. Blackburn v. Reilly, 47 N.J.L. 290, 308, 1 A. 27. Cf. Restatement of Contracts, § 317 and see N.J. Annotations on that section.

8. Restatement of Contracts, § 318.

9. See Schlegel v. Bott, 93 N.J.Eq. 607, 610, 117 A. 605; 3 Williston on Contracts, Rev. ed., § 688; 143 A.L.R. 484, 496–503.

10. Fielding v. Mills, 15 N.Y.Super. 489; 2 Bosw. 489, cited with apparent approval in Wiles Laundering Co. v. Hahlo, 105 N.Y. 234, 240, 11 N.E. 500.

11. N.J.S.A. 2:60–221: " 'Processor' means a person, partnership or corporation engaged in the business of spinning, throwing, manufacturing, bleaching, mercerizing, dyeing, weighting, printing, finishing, dressing, scraping or otherwise treating or processing of linen, cotton, wool, silk, artificial silk, yarns or goods, skins, pelts, furs or hides, or goods of which linen, cotton, wool, silk, artificial silk, skins, pelts, furs or hides form a component part."