**In re FIRST HARTFORD CORPORA-TION, d/b/a Wyandotte Mills, Debtor.**

**A.L.U. TEXTILE COMBINING CORP., Plaintiff,**

v.

**FIRST HARTFORD CORPORATION, d/b/a Wyandotte Mills, Defendant.**

**Bankruptcy No. 81 B 10390 (EJR).**
**Adv. No. 81–5527–A.**

United States Bankruptcy Court, S.D. New York.

Dec. 14, 1982.

Guggenheimer & Untermyer, New York City, for plaintiff.

Ballon, Stoll & Itzler, New York City, for defendant-debtor.

**DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT**

EDWARD J. RYAN, Bankruptcy Judge.

On August 20, 1981, the plaintiff, A.L.U. Textile Combining Corp. ("ALU"), commenced this adversary proceeding against First Hartford Corporation ("First Hartford"), a Chapter 11 debtor in possession, seeking an order determining that ALU has a valid processor's lien on certain textiles which it processed for First Hartford.

On March 15, 1982, First Hartford, contending that, as a matter of law, ALU has no such lien, moved this court for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting it summary judgment. Simultaneously, ALU cross-moved for summary judgment against First Hartford. For the reasons set forth below, First Hartford's motion for summary judgment is granted and ALU's cross-motion is denied.

The following facts are not in issue.

ALU, a New Jersey corporation engaged in the business of processing woolen textiles, maintains a place of business in Hoboken, New Jersey. First Hartford was one of ALU's customers. During the period from 1975 to 1980, First Hartford delivered various lots of textiles to ALU for processing. ALU would examine, shrink, refinish, and bond these goods and distribute them in accordance with instructions it received from First Hartford. Upon completion of each job, ALU would send Hartford invoices which bore the legend, "Terms: net 10 EOM." In addition, ALU's chief executive officer concedes that ALU had an unwritten understanding with First Hartford whereby credit was regularly extended for up to, and sometimes beyond, ninety days.

On February 20, 1981, First Hartford filed its petition for reorganization under Chapter 11 of the Bankruptcy Code. Thereafter, First Hartford was continued in operation and control of its business as debtor in possession. ALU alleges that, as of the filing date, First Hartford owed it $115,518.22 for past processing services rendered. For purposes of this adversary proceeding, First Hartford does not contest this allegation. Upon First Hartford's Chapter 11 filing and subsequent non-payment of the alleged debt, ALU asserted a processor's lien, pursuant to Article 15 of Chapter 44, title 2A of the N.J.Stat.Ann., against a quantity of textiles belonging to First Hartford but in ALU's possession. By stipulation of the parties, said textiles have been sold and the proceeds thereof placed in an escrow account pending the outcome of this litigation.

The issue before this court is whether the agreement to extend credit beyond the dates of ALU's relinquishment of First Hartford's goods vitiates the processor's lien claimed by ALU. We hold that it does.

Since the goods which are the subject of this dispute were processed at ALU's New Jersey plant, the rights of the parties must be determined according to the laws of the State of New Jersey. *Berlet v. Lehigh Valley Silk Mills,* 287 F. 769 (3d Cir.1923).

The New Jersey processor's lien statute, 2A N.J.Stat.Ann. § 44–158 provides that:

A processor shall be entitled to a lien upon the property of others which comes into his possession, for the entire indebtedness of the person, for whose account labor was performed or materials furnished by him in and about the spinning, throwing, manufacturing, bleaching, mercerizing, dyeing, weighting, printing, finishing, dressing or scraping, or otherwise treating or processing or shipping, trucking and storing of said property, or other property for the debtor.

Additionally, 2A N.J.Stat.Ann. § 44–164, in referring to such a processor's lien, provides that, the "paramount right of the processor shall not be surrendered or waived except by express written agreement between the parties involved."

Notwithstanding the words of the statute, New Jersey courts have held that where a processor does work pursuant to a contract which is inconsistent with the statutory scheme, he loses the benefit of the statute. *See, Stone v. Allied Clothing Corp.,* 140 N.J.Eq. 224, 54 A.2d 625 (1947) where a written contract provided that the processor would have no right, title or interest in the processed goods, work on which was not to be paid for until after the goods were relinquished by the processor.

In support of the proposition that an inconsistent contract deprives a processor of any statutory lien, the *Stone* court cited *Wiles Laundry Co. v. Hahlo,* 105 N.Y. 234, 11 N.E. 500 (1887); *Matter of Heinsheimer,* 214 N.Y. 361, 108 N.E. 636 (1915); and *Clark Bros. & Co. v. Pou,* 20 F.2d 74 (4th Cir.1927). In *Wiles,* the court held that "where it is agreed that a credit is to be given for the price of the work, not limited to a period preceding the time for the return of the article, the contract is inconsistent with the right of lien, and none can be set up." (105 N.Y. 234 at 241–42, 11 N.E. 500 at 503). There, a manufacturer of collars and cuffs entered into an oral agreement with a launderer, whereby the launderer agreed to defer payment until the month following the return of the laundered goods. Among the court's reasons

for denying the lien was its finding that the parties understood that the manufacturer was entitled to have the goods returned as soon as they were laundered, and prior to payment, "because the nature of his business probably required it." (105 N.Y. 234 at 243, 11 N.E. 500 at 504).

In *Matter of Heinsheimer, supra,* Judge Cardozo reiterated that:

> If the work is done, not on the credit of the thing itself, but solely on the credit of the owner, there is a waiver of the lien. Such a waiver will result, for illustration, where the agreement is that the thing shall be first returned and payment made thereafter.

(214 N.Y. 361 at 366, 108 N.E. 636 at 638). Likewise, in *Clark Bros. & Co., supra,* the court stated that where either the "expressed terms or the clear intent of the contract" are inconsistent with a lien, a lien cannot arise. (20 F.2d 74 at 76). The court observed that:

> A special contract to accept a particular mode of payment of a demand, to which a lien would otherwise attach, or to give a time or credit for the payment, is inconsistent with a claim to retain the possession of the property until the payment is made, and consequently there is no right of lien in such a case.

(*Id.* at 76, citing 19 *American & English Encyclopedia of Law* 12).

The *Stone* decision was later relied on by the Court of Appeals for the Second Circuit in *Newark Slip Cont. Co. v. New York Credit Men's Adj. B.,* 186 F.2d 152 (2d Cir. 1950). In *Newark,* the court held that the extension of credit beyond the time of the processor's possession negated any lien under the New Jersey processor's lien statute. *Newark* involved an oral contract between a processor and one of its customers. The processor had thereby agreed to ship the customer's goods and accept payment the following week. The court, following *Stone,* held that neither a common law nor a statutory lien existed.

▮ The foregoing cases are consistent with the reasoning espoused in *Jones on Liens,* § 1015 (3d ed. 1914):

> There can be no lien, at common law or by usage, where the parties make a special agreement inconsistent with a lien, either for a particular mode of payment, or for payment at a future time, although without such agreement the right to a lien would be implied or recognized. If such agreement is antecedent to the possession, no lien is created; if it is made afterwards, the lien is waived.

We find persuasive the reasoning that an agreement to extend credit beyond the delivery date negates any processor's lien.

In the instant case, the testimony of Mr. Charles Lerner, ALU's manager, chief executive officer and principal shareholder, unmistakably attests to ALU's consistent willingness to extend credit beyond the date of relinquishment of possession of First Hartford's goods.

Plaintiff, however, citing *In re Tele King Corporation,* 137 F.Supp. 633 (S.D.N.Y. 1955), urges that since no written contract expressly mandated that ALU relinquish possession prior to receiving payment, the statutory lien remains intact, despite ALU's continuous relinquishment of the processed textiles well in advance of payment. We find such a reading of the *Tele King* case untenable. *Tele King,* a case brought under New York law, involved the voluntary extension of credit for *some* deliveries under an entire contract, where a relationship of billing on a "Net Cash" basis had previously been established. The court found that "there was *no agreement for the extension of credit* and the processor would have been within its rights in demanding payment before delivering the equipment." (*Id.* at 634, emphasis added).

Unlike the voluntary extension of credit in *Tele King,* the extension of credit in the instant case was by prior agreement of both parties. The deposition of Mr. Lerner taken on October 16, 1981 concedes this point. His testimony includes statements that ALU's practice was to receive goods from First Hartford which would be inspected, processed and bonded by ALU and then distributed by ALU to First Hartford's cus-

tomers. First Hartford was, concededly, allowed ninety days in which to pay the invoices which were sent out by ALU upon completion of each job. Mr. Lerner agreed that this arrangement was pursuant to an "oral understanding" between the parties (Tr. 10/16/81 at p. 8), and that ALU did have an "agreement" with First Hartford respecting the ninety day extension of credit (*id.*). Regardless of the ninety day extension, it is clear from the written terms, "net 10 EOM," which appeared on the invoices, that First Hartford had ten days after the end of the month in which an invoice was sent by which to pay. ALU nowhere denied that, in each and every case, relinquishment preceded payment. The continued extension of credit in the context of an "oral understanding" or "agreement" that such credit would be extended, coupled with the printed terms of credit found on the invoices, seems to us indicative of ALU's expectation that it would look to the debtor, rather than to the goods in its possession, for payment.

Moreover, inquiry into the statutory history underlying 2A N.J.Stat.Ann. § 44–158 reveals that the statute, originally enacted as 1928 N.J. Laws, ch. 253, did not contemplate affording protection to processors who, having relinquished possession, claim a lien against those to whom they had granted credit. The original preamble to the processor's lien statute, omitted in the Revised Statutes Annotated, began:

> Whereas, It is the custom of manufacturers and others to send property to various processors to be processed, and such processors, *relying on their ability to hold such property as security* for the entire indebtedness, habitually extend very liberal credit to such manufacturers and others *and whereas* occasionally the manufacturers and other persons *assign an interest in the property to third persons, prior to delivery of the property to the processor,* to the great prejudice of the processors:
>
> Be it enacted . . . .

(1928 N.J.Laws, ch. 253, p. 500, emphasis added). Unlike the processor contemplated by the statutory preamble, ALU never relied on its ability to hold the textiles as security, nor does ALU claim that prior assignments were ever made to its detriment. In agreeing to extend credit beyond the time of its possession of First Hartford's goods, ALU removed itself from the class of those entitled to a statutory lien.

The prior case law, cited above, suggests that the New Jersey processor's lien statute must be read narrowly. The deposition of Mr. Lerner leaves little doubt that there is no triable issue of fact regarding the existence of the credit agreement between the parties or of ALU's unbroken practice of accepting payment subsequent to distribution of First Hartford's goods. We are, therefore, compelled as a matter of law to hold that ALU has neither a common law nor a statutory processor's lien on the disputed goods. Accordingly, ALU's cross-motion is denied and First Hartford's motion for summary judgment is hereby granted.

Settle an appropriate order.