In re FIRST HARTFORD CORPORA-
TION, d/b/a Wyandotte
Mills, Debtor.

A.L.U. TEXTILE COMBINING CORP.,
Plaintiff-Appellant,

v.

FIRST HARTFORD CORPORATION,
d/b/a Wyandotte Mills,
Defendant-Appellee.

Bankruptcy No. 83 Civ. 2319 (KTD).

United States District Court,
S.D. New York.

Aug. 26, 1983.

---

Guggenheimer & Untermyer, New York City, for plaintiff-appellant; Ephraim K. Leibowitz, Jeffrey R. Zuckerman, New York City, of counsel.

Ballon, Stoll & Itzler, New York City, for defendant-appellee First Hartford Corporation; Ronald S. Itzler, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Appellant A.L.U. Textile Combining Corp. ("ALU") brought this action in the United States Bankruptcy Court, 25 B.R. 563, for the Southern District of New York against appellee First Hartford Corporation ("First Hartford"), a Chapter XI debtor in possession, seeking an order determining that ALU has a valid processor's lien on certain textiles that ALU had processed for First Hartford. First Hartford claimed that as a matter of law ALU did not have a lien, and moved for summary judgment pursuant to Fed.R.Civ.P. 56. On December 14, 1982, Bankruptcy Judge Edward J. Ryan granted First Hartford's motion for summary judgment. This appeal followed.

ALU is a New Jersey corporation engaged in textile processing. First Hartford was one of its customers. During the course of their business relationship, ALU generally received unfinished textiles from First Hartford for examining, shrinking, refinishing, and bonding. The indebtedness at issue here involves $115,518.22 in unpaid processing services rendered by ALU on First Hartford's behalf prior to the latter's Chapter XI bankruptcy filing.

## FACTS

On February 20, 1981, First Hartford filed a petition for reorganization under Chapter XI of the Bankruptcy Code. First Hartford continued to operate and control its business as a debtor in possession after this date. ALU thereafter asserted a processor's lien, pursuant to New Jersey statute, against some of First Hartford's textiles which were in ALU's possession. By stipulation of the parties, these textiles were sold and the proceeds placed in an escrow account with plaintiff's attorneys pending the outcome of the bankruptcy court litigation.

Judge Ryan found that ALU's agreement to extend credit to First Hartford beyond the dates of ALU's relinquishment of First Hartford's goods waived ALU's claimed statutory processor's lien. Accordingly, Judge Ryan granted defendant's motion for summary judgment and ordered plaintiff's attorneys to release the escrow amount to First Hartford.

## DISCUSSION

I agree with the bankruptcy court's decision that ALU's ninety day extension of credit to First Hartford vitiated its processor's lien. The New Jersey processor's lien statute, 2A N.J.Stat. § 44–158, provides that:

> A processor shall be entitled to a lien upon the property of others which comes into his possession, for the entire indebtedness of the person, for whose account labor was performed or materials furnished by him in and about the spinning, throwing, manufacturing, bleaching, mercerizing, dyeing, weighting, printing, finishing, dressing or scraping, or otherwise treating or processing or shipping, trucking and storing of said property, or other property for the debtor.

New Jersey courts, however, have held that when a processor provides services on credit, this is inconsistent with the statutory lien provision, and the processor loses the benefit of the statute. *See Stone v. Allied Clothing Corp.,* 140 N.J.Eq. 224, 54 A.2d 625 (1947); *see also Matter of Heinsheimer,* 214 N.Y. 361, 108 N.E. 636 (1915) (N.Y. processor's lien statute). The *Stone* decision was later relied on by the Second Circuit in reaching a similar holding. *See Newark*

*Slip Contracting Co. v. New York Credit Men's Adjustment Bureau,* 186 F.2d 152 (2d Cir.1950) (oral extension of credit beyond time of processor's delivery of goods negated any lien under the New Jersey lien statute).

In *Matter of Heinsheimer,* the New York Court of Appeals, construing similar statute, stated:

> If work is done, not on the credit of the thing itself, but solely on the credit of the owner, there is a waiver of the lien. Such a waiver will result, for illustration, where the agreement is that the thing shall be first returned and payment made thereafter.

214 N.Y. at 366, 108 N.E. at 638. The reasoning supporting the conclusions reached by these courts is straight forward: A processor may rely for payment on physical possession of the goods, or on the customer's financial well-being—but it is inconsistent for them to rely on both. A processor relies on the customer's financial strength when it extends the customer credit, and redelivers the goods prior to payment. Obviously, the processor then is not relying on any physical possession, but rather on the debtor's future payment. The processor's extension of credit thus operates as a waiver of its processor's lien.

In the instant case, ALU, the processor, admits that it extended ninety days credit to First Hartford. Charles Lerner, ALU's chief executive officer, testified that the two parties had an "oral understanding" regarding the credit arrangement and that the "net 10 EOM" invoice term was never observed.[1] *Deposition of Charles Lerner, Appendix,* Exhibit C, at 7–8. The latter reference to "Net 10 EOM" is likewise a reference to credit terms—though it was subsequently modified to the more liberal ninety day credit period. Mr. Lerner also conceded that on most occasions when new raw textile shipments were received by ALU, outstanding debts from ALU's processing for First Hartford existed. *Id.*

ALU unpersuasively claims that it never relied on the extension of credit, but rather on its possession of First Hartford's goods. This argument is not evenhanded. ALU cannot on the one hand tell its customer First Hartford that it is extending credit, and yet on the other hand *sub silentio* have decided that it never intends to rely on such credit. The willingness to extend credit is a powerful sales device for a company attempting to obtain customers. ALU cannot use such a device to obtain First Hartford's continued business and then dispute the validity of this credit arrangement. Anytime a customer has an ongoing relationship with a processor whereby the customer supplies the processor with unfinished textiles each month, the processor could always claim that it was relying on the subsequent goods on hand for payment and not the credit it extended. The frequent customer would not know whether it actually had obtained services on credit. ALU certainly does not claim that it withheld particular goods that it processed until it received payment from First Hartford. The processor, therefore, may rely on its statutory lien or on the company's financial well-being, but it cannot expressly rely on one while silently relying on the other.

ALU's reliance on *In re Tele King Corporation,* 137 F.Supp. 633 (S.D.N.Y.1955), a case brought under New York law, is misplaced. In *Tele King,* the court found that because there was no agreement between the parties for the extension of credit, the plaintiff "would have been within its rights in demanding payment before delivering the equipment." *Id.* at 634. In fact, the plaintiff in that case withheld certain debtor's goods. The instant case presents a different situation. Here all services were performed on credit extended by ALU. Moreover, even had ALU held the goods it processed until payment, a factor which normally supports a finding that there was a statutory lien, this would have constituted a breach of contract. Under the ninety day credit terms that ALU has admittedly extended, ALU was obligated in good faith to

---

1. "Net 10 EOM" means that First Hartford would have 10 days after the end of the month of an invoice to pay the amount due on that invoice.

turn the goods over within a reasonable period of time of completion of the processing work.

Therefore, based upon the undisputed facts, I find that the bankruptcy judge correctly granted summary judgment in holding that ALU had waived its statutory lien rights. The decision of Judge Ryan is affirmed.